## LINDA TRANKOVICH *v.* FRENISH, INC., ET AL.
## (AC 16822)

Foti, Spear and Stoughton, Js.

Argued December 3, 1997—officially released February 10, 1998

*Neil J. Ambrose*, for the appellants (defendants).

*James R. Wittstein*, for the appellee (plaintiff).

*Opinion*

STOUGHTON, J. The named defendant, Frenish, Inc., doing business as Chamberlain Ambulance (Chamberlain), and the defendant workers' compensation insurance carrier appeal from the decision of the compensation review board reversing the decision of the trial commissioner, who dismissed the request of the plaintiff, Linda Trankovich, for an adjustment of her compensation rate and remanded the case for reconsideration of the rate.[1] The defendants assert that the board improperly interpreted General Statutes § 31-310.[2] We agree.

The trial commissioner made the following findings of fact. The plaintiff injured her left wrist on January

[1] The defendants appeal from a final judgment. Since a ministerial, noncontroversial calculation is all that remains before the commissioner, the review board's decision amounted to a final judgment. See *Szudora* v. *Fairfield*, 214 Conn. 552, 556, 573 A.2d 1 (1990); *Vachon* v. *General Dynamics Corp.*, 29 Conn. App. 654, 657, 617 A.2d 476 (1992), cert. denied, 224 Conn. 927, 619 A.2d 852 (1993).

[2] General Statutes § 31-310 (a) provides in relevant part: "For the purposes of this chapter, the average weekly wage shall be ascertained by dividing the total wages received by the injured employee from the employer in whose service he is injured during the fifty-two calendar weeks immediately preceding the week during which he was injured, by the number of calendar weeks during which, or any portion of which, the employee was actually employed by the employer . . . . Where the injured employee has worked for more than one employer as of the date of the injury and the average weekly wage received from the employer in whose employ he was injured, as determined under the provisions of this section, are insufficient for him to obtain the maximum weekly compensation rate from the employer under section 31-309, prevailing as of the date of the injury, his average weekly wages shall be calculated upon the basis of wages earned from all such employers in the period of concurrent employment not in excess of fifty-two weeks prior to the date of the injury, but the employer in whose employ the injury occurred shall be liable for all medical and hospital costs and a portion of the compensation rate equal to seventy-five per cent of the average weekly wage paid by him to the injured employee, after such earnings have been reduced by any deduction for federal or state taxes, or both, and for the federal Insurance Contribution Act made from such employee's total wages received from such employer during the period of calculation of such average weekly wage, but not less than an amount equal to the minimum

8, 1994, while employed by Chamberlain, and the injury was accepted by the employer as a compensable claim and paid accordingly. She began her employment at Chamberlain in 1989 as a part-time emergency medical technician (EMT), working approximately twenty-two hours a week. She was also employed as a computer operator at Beiersdorf, Inc., until August 13, 1993. On September 1, 1993, she began full-time work for Chamberlain, working forty hours per week with the same duties as she had as a part-time EMT. The plaintiff argued that her part-time employment at Chamberlain, through August 13, 1993, should not be included in the fifty-two week statutory formula found in § 31-310 to establish her average weekly wage or, in the alternative, that her employment at Beiersdorf, Inc., should be considered concurrent employment if the fifty-two week formula applied.

The trial commissioner concluded that the plaintiff's increased hours from twenty-two to forty, with no change in job duties, was not a new contract of employment. The plaintiff does not challenge that conclusion. She did not have concurrent employment on January 8, 1994, the date of her injury; therefore, her employment at Beiersdorf, Inc., should not be included in computing the average weekly wage. We note that the findings of fact made by the trial commissioner have not been challenged. The conclusions drawn from those facts by the commissioner must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference improperly or unreasonably drawn from them. *Fair* v. *People's Savings Bank*, 207 Conn. 535, 539, 542 A.2d 1118 (1988).

compensation rate prevailing as of the date of the injury. The remaining portion of the applicable compensation rate shall be paid from the Second Injury Fund upon submission to the Treasurer by the employer or the employer's insurer of such vouchers and information as the Treasurer may require. . . ."

The parties agree that the employer determined the average weekly wage of the plaintiff by adding the total wages received by her from Chamberlain during the fifty-two calendar weeks immediately preceding the week during which she was injured and dividing by the number of calendar weeks during which she was actually employed by the employer. That is precisely what § 31-310 commands. The board agreed with the commissioner that because on the date of injury the plaintiff was not working for Beiersdorf, Inc., the wages earned there were not concurrent and could not be included in deriving an average weekly wage. Nevertheless, it found inequity in calculating the benefit rate based on the total compensation received from the employer during the fifty-two weeks preceding the injury because that resulted in a weekly benefit rate far lower than the pay she received in any week during which she was working at the two jobs or was working full-time at Chamberlain. The board concluded that the calculation used failed to account for the legislature's intent to compensate injured workers based on their loss of earning power at the time of their injuries and inaccurately reflected the plaintiff's salary. We disagree.

The pertinent language of § 31-310 could not be clearer. While it is possible that in some cases the legislature has not said what it meant, nevertheless, when statutory language is clear and unambiguous we must presume that it meant what it said. "It is well settled that a statute must be applied as its words direct." (Internal quotation marks omitted.) *All Brand Importers, Inc.* v. *Dept. of Liquor Control*, 213 Conn. 184, 194, 567 A.2d 1156 (1989); *Pascarelli* v. *Moliterno Stone Sales, Inc.*, 44 Conn. App. 397, 400, 689 A.2d 1132, cert. denied, 240 Conn. 926, 692 A.2d 1282 (1997). The statute contains no exception for situations such as in this case.

The decision of the compensation review board is reversed and the case remanded with direction to reinstate the commissioner's decision.

In this opinion the other judges concurred.