# NILSA RODRIGUEZ *v.* MARK J. TESTA ET AL.
## (SC 18389)

Rogers, C. J., and Norcott, Katz, Palmer, Vertefeuille,
Zarella and McLachlan, Js.

1

Argued December 10, 2009—officially released May 4, 2010

*Andre M. Mura*, pro hac vice, with whom was *Lori D. McHugh*, for the appellant (plaintiff).

*Cesar A. Noble*, with whom, on the brief, was *Yelena Akim*, for the appellee (defendant Daimler Chrysler Financial Service America Trust).

*Opinion*

ZARELLA, J. The principal issue in this appeal is whether 49 U.S.C. § 30106,[1] also known as the Graves

---

[1] Title 49 of the United States Code, § 30106, provides in relevant part: "(a) In General.—An owner of a motor vehicle that rents or leases the vehicle to a person (or an affiliate of the owner) shall not be liable under the law of any State or political subdivision thereof, by reason of being the owner of the vehicle (or an affiliate of the owner), for harm to persons or property that results or arises out of the use, operation, or possession of the vehicle during the period of the rental or lease, if—

"(1) the owner (or an affiliate of the owner) is engaged in the trade or business of renting or leasing motor vehicles; and

"(2) there is no negligence or criminal wrongdoing on the part of the owner (or an affiliate of the owner).

"(b) Financial Responsibility Laws.—Nothing in this section supersedes the law of any State or political subdivision thereof—

"(1) imposing financial responsibility or insurance standards on the owner of a motor vehicle for the privilege of registering and operating a motor vehicle; or

Amendment,[2] preempts state law imposing vicarious liability on the lessor of an uninsured motor vehicle for damages caused by the negligent acts of the lessee or an agent thereof. The plaintiff, Nilsa Rodriguez, claims that the trial court improperly granted the summary judgment motion of the defendant Daimler Chrysler Financial Service America Trust (Daimler Chrysler) because the Amendment does not preempt General Statutes § 14-154a[3] under the circumstances of this case. The plaintiff also claims that the Amendment is an unconstitutional exercise of Congressional power under the commerce clause of the United States constitution. See U.S. Const., art. I, § 8, cl. 3. Daimler Chrysler responds that the trial court properly granted its summary judgment motion because the Amendment is constitutional and a lessor's failure to insure a vehicle in accordance with § 14-154a (b) (1) does not trigger the Amendment's savings clause, which excludes from preemption state laws imposing liability on lessors for, inter alia, failure to meet "financial responsibility or liability insurance requirements . . . ." 49 U.S.C. § 30106 (b) (2) (2006).[4] We agree with Daimler Chrysler

"(2) imposing liability on business entities engaged in the trade or business of renting or leasing motor vehicles for failure to meet the financial responsibility or liability insurance requirements under State law. . . ."

[2] We hereinafter refer to 49 U.S.C. § 30106 as the Graves Amendment or the Amendment.

[3] General Statutes § 14-154a provides in relevant part: "(a) Any person renting or leasing to another any motor vehicle owned by him shall be liable for any damage to any person or property caused by the operation of such motor vehicle while so rented or leased, to the same extent as the operator would have been liable if he had also been the owner.

"(b) The provisions of subsection (a) of this section shall not apply to:

"(1) Any person, with respect to the person's lease to another of a private passenger motor vehicle, if the total lease term is for one year or more and if, at the time damages are incurred, the leased vehicle is insured for bodily injury liability in amounts of not less than one hundred thousand dollars per person and three hundred thousand dollars per occurrence . . . ."

[4] The Amendment's savings clause appears in 49 U.S.C. § 30106 (b) and consists of two provisions, one in subdivision (1) and the other in subdivision (2). This appeal primarily concerns the savings provision of 49 U.S.C. § 30106 (b) (2). In the interest of simplicity, we hereinafter refer to the savings

that the Amendment preempts § 14-154a under the facts of this case and that the Amendment is constitutional. Accordingly, we affirm the judgment of the trial court.

The following undisputed facts[5] and procedural history are relevant to our resolution of this appeal. On July 9, 2006, the plaintiff was involved in a motor vehicle accident in which a vehicle operated by the named defendant, Mark J. Testa, struck her vehicle. Testa's company, Bright Lighting, Inc., had leased the vehicle from Daimler Chrysler for a term of thirty-nine months, but the vehicle was not insured by Daimler Chrysler at the time of the accident.

Thereafter, the plaintiff commenced this action against Testa, Daimler Chrysler and three other defendants.[6] In her amended complaint, the plaintiff alleged in part that Daimler Chrysler, as owner and lessor of the vehicle, was liable for Testa's negligent operation of the vehicle under the theory of vicarious liability set forth in § 14-154a. Daimler Chrysler filed a motion for summary judgment, arguing that the state law was preempted by the Graves Amendment, and the trial court granted the motion. Relying in part on *Farmers Texas County Mutual* v. *Hertz Corp.*, 282 Conn. 535, 543–44 n.9, 923 A.2d 673 (2007), and *Moncrease* v. *Chase Manhattan Auto Finance Corp.*, 98 Conn. App. 665, 668 n.1, 911 A.2d 315 (2006), the court concluded that "[t]he law on the question of the effect of [the Amendment] is well settled. Connecticut can no longer impose vicarious liability on the owner of a rented or leased vehicle."

provision of 49 U.S.C. § 30106 (b) (2) as the "savings clause." In the event that we must compare the two savings provisions of 49 U.S.C. § 30106 (b) for purposes of illustration, we refer to them specifically by subdivision.

[5] In its memorandum of decision, the trial court noted that Daimler Chrysler did not dispute "any of the relevant facts" that the plaintiff had alleged, including the fact that Daimler Chrysler was the owner of the vehicle in question.

[6] The other defendants are Bright Lighting, Inc., Michael Plourde and GEICO Indemnity Company.

(Internal quotation marks omitted.) The court further concluded that the Amendment was constitutional, as there was "a clear, self-evident relation between interstate commerce and the leasing of motor vehicles." The court thus determined that, because there was no genuine issue of material fact and the plaintiff did not allege negligence or criminal wrongdoing on the part of Daimler Chrysler to bring her claim outside the scope of the Amendment; see 49 U.S.C. § 30106 (a) (2) (2006); Daimler Chrysler had met its burden of establishing that it was entitled to judgment as a matter of law.

On January 9, 2009, the plaintiff filed a motion for articulation of the trial court's ruling. In its response, the court explained that examples of negligence or criminal wrongdoing that would establish Daimler Chrysler's liability under state law would be the leasing of a vehicle "with bald tires, faulty brakes, a sticky gas pedal or any other known mechanical [defect]" that was "the proximate cause of the accident." The court further explained that, because "leased vehicles may be driven across state lines," Congress has authority under the commerce clause of the United States constitution to adopt laws regulating such vehicles. This appeal followed.[7]

We begin with the applicable standard of review. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for

---

[7] The plaintiff appealed to the Appellate Court from the judgment of the trial court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . Our review of the trial court's decision to grant [Daimler Chrysler's] motion for summary judgment is plenary." (Internal quotation marks omitted.) *Bellemare* v. *Wachovia Mortgage Corp.*, 284 Conn. 193, 198–99, 931 A.2d 916 (2007). Issues of statutory construction and constitutional interpretation are also matters of law subject to our plenary review. See, e.g., *Honulik* v. *Greenwich*, 293 Conn. 641, 668, 980 A.2d 845 (2009) (*Katz, J.*, dissenting) (constitutional interpretation); *Fairchild Heights, Inc.* v. *Amaro*, 293 Conn. 1, 8, 976 A.2d 668 (2009) (statutory construction).

I

The plaintiff first claims that the trial court improperly granted Daimler Chrysler's summary judgment motion because the Graves Amendment does not preempt her state law claim. The plaintiff contends that the two cases on which the trial court relied did not address the preemptive scope of the Amendment in relation to Connecticut law. She also contends that the trial court improperly construed the Amendment's savings clause, which excludes from preemption those state laws that impose liability on motor vehicle lessors for failure to comply with state financial responsibility or liability insurance requirements. The plaintiff claims that § 14-154a (b) (1) is such a law because it provides that a long-term lessor[8] that obtains bodily injury liability insurance of not less than $100,000 per person and $300,000 per occurrence may avoid vicarious liability for the lessee's negligent conduct, thus encouraging such lessors to provide the specified coverage for their vehicles. Daimler Chrysler replies that the trial court

[8] We use the term "long-term lessor" to refer to a lessor that enters into a lease with a term of one year or more.

properly granted its summary judgment motion because § 14-154a is not the type of financial responsibility or liability insurance law that qualifies for exemption from preemption under the savings clause. We agree with Daimler Chrysler.

"The question of preemption is one of federal law, arising under the supremacy clause of the United States constitution." (Internal quotation marks omitted.) *Hackett* v. *J.L.G. Properties, LLC*, 285 Conn. 498, 504, 940 A.2d 769 (2008). The supremacy clause of the United States constitution provides in relevant part: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const., art. VI, cl. 2. "[S]tate law is pre-empted under the [s]upremacy [c]lause . . . in three circumstances. First, Congress can define explicitly the extent to which its enactments pre-empt state law. . . . Preemption fundamentally is a question of congressional intent . . . and when Congress has made its intent known through explicit statutory language, the courts' task is an easy one.

"Second, in the absence of explicit statutory language, state law is pre-empted where it regulates conduct in a field that Congress intended the [f]ederal [g]overnment to occupy exclusively. Such an intent may be inferred from a scheme of federal regulation . . . so pervasive as to make reasonable the inference that Congress left no room for the [s]tates to supplement it, or where an [a]ct of Congress touch[es] a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject. . . . Where . . . the field which Congress is said to have pre-empted includes areas that have been traditionally occupied by

the [s]tates, congressional intent to supersede state laws must be clear and manifest. . . .

"Finally, state law is pre-empted to the extent that it actually conflicts with federal law. Thus, the [c]ourt has found pre-emption where it is impossible for a private party to comply with both state and federal requirements . . . or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." (Citations omitted; internal quotation marks omitted.) *English* v. *General Electric Co.*, 496 U.S. 72, 78–79, 110 S. Ct. 2270, 110 L. Ed. 2d 65 (1990); see also *Hackett* v. *J.L.G. Properties, LLC*, supra, 285 Conn. 504.

The Graves Amendment was enacted by Congress on August 10, 2005,[9] as part of a comprehensive transportation bill entitled the Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users (act), Pub. L. No. 109-59, 119 Stat. 1144 (2005). "The [a]ct deals generally with motor vehicle safety, primarily providing billions of dollars in funding allocations for transportation projects." *Meyer* v. *Nwokedi*, 777 N.W.2d 218, 222 (Minn. 2010). The Amendment was included in the act as a tort reform measure intended to bar recovery against car rental and leasing companies on the basis of vicarious liability. See, e.g., *Garcia* v. *Vanguard Car Rental USA, Inc.*, 540 F.3d 1242, 1244 (11th Cir. 2008), cert. denied, 555 U.S. 1174, 129 S. Ct. 1369, 173 L. Ed. 2d 591 (2009); *Green* v. *Toyota Motor CreditCorp*, 605 F. Sup. 2d 430, 434 (E.D.N.Y. 2009). The Amendment contains a preemption clause and two savings provisions. The preemption clause in subsection

---

[9] The Graves Amendment is applicable to all actions "commenced on or after the date of enactment [namely, August 10, 2005] . . . without regard to whether the harm that is the subject of the action, or the conduct that caused the harm, occurred before such date of enactment." 49 U.S.C. § 30106 (c) (2006). The Amendment clearly applies to the present action, which was commenced in 2006.

(a) provides in relevant part: "An owner of a motor vehicle that rents or leases the vehicle to a person . . . shall not be liable under the law of any State . . . by reason of being the owner of the vehicle . . . for harm to persons or property that results or arises out of the use, operation, or possession of the vehicle during the period of the rental or lease, if—

"(1) the owner . . . is engaged in the trade or business of renting or leasing motor vehicles; and

"(2) there is no negligence or criminal wrongdoing on the part of the owner . . . ." 49 U.S.C. § 30106 (a) (2006).

The savings provisions in subsection (b) provide in relevant part: "Nothing in this section supersedes the law of any State . . .

"(1) imposing financial responsibility or insurance standards on the owner of a motor vehicle for the privilege of registering and operating a motor vehicle; or

"(2) imposing liability on business entities engaged in the trade or business of renting or leasing motor vehicles for failure to meet the financial responsibility or liability insurance requirements under State law." 49 U.S.C. § 30106 (b) (2006).

The parties do not dispute that Daimler Chrysler is engaged in the trade or business of leasing motor vehicles, is the owner of the vehicle involved in the accident, is not subject to allegations of negligence or criminal wrongdoing, and that the leased vehicle was uninsured. Rather, they dispute whether Daimler Chrysler is vicariously liable under § 14-154a because it constitutes the type of "financial responsibility or liability insurance [requirement]" that the savings clause was intended to exclude from preemption. Thus, our first task is to determine the meaning of the phrase "financial respon-

sibility or liability insurance requirements," as that phrase is used in the savings clause.

"With respect to the construction and application of federal statutes, principles of comity and consistency require us to follow the plain meaning rule . . . because that is the rule of construction utilized by the United States Court of Appeals for the Second Circuit. . . . Moreover, it is well settled that [t]he decisions of the Second Circuit Court of Appeals carry particularly persuasive weight in the interpretation of federal statutes by Connecticut state courts. . . . Accordingly, our analysis of the pertinent federal [provision] begins with the plain meaning of the statute. *United States* v. *Ripa*, 323 F.3d 73, 81 (2d Cir. 2003); [see also] *In re Caldor Corp.*, 303 F.3d 161, 167–68 (2d Cir. 2002) ([a]s long as the statutory scheme is coherent and consistent, there generally is no need for a court to inquire beyond the plain language of the statute . . .). If the meaning of the text is not plain, however, we must look to the statute as a whole and construct an interpretation that comports with its primary purpose and does not lead to anomalous or unreasonable results." (Citation omitted; internal quotation marks omitted.) *Dark-Eyes* v. *Commissioner of Revenue Services*, 276 Conn. 559, 571, 887 A.2d 848, cert. denied, 549 U.S. 815, 127 S. Ct. 347, 166 L. Ed. 2d 26 (2006).

Because there is no Second Circuit decision interpreting the savings clause, we turn to *Garcia* v. *Vanguard Car Rental USA, Inc.*, supra, 540 F.3d 1242, an Eleventh Circuit decision, for guidance. In that case, the court examined the language in the savings clause, the terms of which are not defined elsewhere in the act, and concluded that Congress had "used the term 'financial responsibility law[s]' to denote state laws which impose insurance-like requirements on owners or operators of motor vehicles . . . but permit them to carry, in lieu of liability insurance per se, its financial equivalent,

such as a bond or self-insurance." Id., 1247. The court reasoned, under the principle of noscitur a sociis,[10] that the statutory context strongly implied that financial responsibility is closely linked to insurance requirements because both savings provisions, namely, 49 U.S.C. § 30106 (b) (1), which exempts from preemption laws "imposing financial responsibility or insurance standards," and 49 U.S.C. § 30106 (b) (2), which exempts from preemption laws penalizing the "failure to meet the financial responsibility or liability insurance requirements under State law," strongly imply that "financial responsibility is closely linked to insurance requirements." *Garcia* v. *Vanguard Car Rental USA, Inc.*, supra, 1247. The court further observed that "the most common legal usage of the term 'financial responsibility' is [in reference] to state laws which require either liability insurance or a functionally equivalent financial arrangement. . . . Likewise, Black's Law Dictionary defines financial responsibility only to include requirements that motorists have proof of 'insurance or other financial accountability.' " *Garcia* v. *Vanguard Car Rental USA, Inc.*, supra, 1247–48, quoting Black's Law Dictionary (8th Ed. 2004). The court also noted that an insurance treatise on which the plaintiffs in that case relied not only suggested a meaning similar to that in Black's Law Dictionary, but indicated that "financial responsibility" laws "may be used to refer to statutes which suspend a motorist's license or vehicle registration if [the motorist] fail[s] to satisfy a judgment resulting from an accident." *Garcia* v. *Vanguard Car Rental USA, Inc.*, supra, 1248, citing 7A G. Couch, Insurance (3d Ed. Rev. 2005) § 109:34, p. 109-46. The court thus concluded that "the import of the Graves Amendment is clear. States may require insurance or its equivalent as a condition of licensing or registration, or may

[10] Noscitur a sociis is a canon of statutory construction providing that "statutory terms . . . [that are] ambiguous when considered alone . . . should be given related meaning when grouped together." *Garcia* v. *Vanguard Car Rental USA, Inc.*, supra, 540 F.3d 1247.

impose such a requirement after an accident or unpaid judgment. 49 U.S.C. § 30106 (b) (1) [2006]. They may suspend the license and registration of, or otherwise penalize, a car owner who fails to meet the requirement, or who fails to pay a judgment resulting from a collision.[11] 49 U.S.C. § 30106 (b) (2) [2006]. They simply may not impose such judgments against rental car [or leasing] companies based on the negligence of their lessees. 49 U.S.C. § 30106 (a) [2006]." *Garcia* v. *Vanguard Car Rental USA, Inc.*, supra, 1249.

To our knowledge, no other federal court has considered the meaning of the term "financial responsibility" laws, as that term is used in the savings clause. Courts in at least two other states have done so, however, and have relied on *Garcia* in concluding that "financial responsibility" laws are laws that impose insurance like requirements on the owners of motor vehicles. *Meyer* v. *Nwokedi*, supra, 777 N.W.2d 224 (adopting *Garcia* analysis and adding that "the phrase 'financial responsibility' appears to modify the word 'requirement[s]' in the . . . savings clause, thereby supporting the conclusion that 'financial responsibility' refers to insurance-like requirements"); see also *West* v. *Enterprise Leasing Co.*, 997 So. 2d 1196, 1197–98 (Fla. App. 2008) (adopting *Garcia* analysis); *Vargas* v. *Enterprise Leasing Co.*, 993 So. 2d 614, 621 (Fla. App. 2008) (concluding that term

---

[11] In claiming that the savings clause preserves the state statute because 49 U.S.C. § 30106 (b) (2), unlike 49 U.S.C. § 30106 (b) (1), is not expressly limited in its application to state laws relating to the registration and operation of a motor vehicle, the plaintiff relies on the principle that, when "Congress includes particular language in one section of a statute but omits it in another section of the same [a]ct, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (Internal quotation marks omitted.) *Russello* v. *United States*, 464 U.S. 16, 23, 104 S. Ct. 296, 78 L. Ed. 2d 17 (1983). We disagree. More than one canon of statutory construction may be relevant in any given case, and we do not find the application of the principle of noscitur a sociis, on which the Eleventh Circuit relied in part in *Garcia*, unreasonable under the facts of the present case.

"financial responsibility," as used in Amendment's savings clause, "denote[s] a minimum level of compulsory [automobile] insurance [coverage] or its equivalent"). We agree with the well reasoned analysis in *Garcia* and with that court's conclusion that the "financial responsibility or liability insurance requirements" to which the savings clause refers consist of insurance like requirements imposed on business entities engaged in the trade or business of renting or leasing motor vehicles. See *Garcia* v. *Vanguard Car Rental USA, Inc.*, supra, 540 F.3d 1247. Accordingly, we likewise conclude that the savings clause preserves those state statutes that impose liability on a lessor for failure to satisfy such requirements.

Our next task is to determine what kind of state insurance like requirements satisfies the definition of a financial responsibility law and thus falls within the scope of the savings clause. Two recent cases from other jurisdictions are instructive on this issue. In *Garcia*, the plaintiffs had argued that the disputed Florida law was a financial responsibility law that fell within the savings clause because the law "induce[d]" car rental companies to ensure that their lessees were adequately insured. Id., 1248. The court initially observed that the Florida statute[12] accomplished its purpose of reducing

[12] Fla. Stat. § 324.021 (9) (b) (2007) provides in relevant part: "2. The lessor, under an agreement to rent or lease a motor vehicle for a period of less than 1 year, shall be deemed the owner of the motor vehicle for the purpose of determining liability for the operation of the vehicle or the acts of the operator in connection therewith only up to $100,000 per person and up to $300,000 per incident for bodily injury and up to $50,000 for property damage. *If* the lessee or the operator of the motor vehicle is uninsured or has any insurance with limits less than $500,000 combined property damage and bodily injury liability, the lessor shall be liable for up to an additional $500,000 in economic damages only arising out of the use of the motor vehicle. The additional specified liability of the lessor for economic damages shall be reduced by amounts actually recovered from the lessee, from the operator, and from any insurance or self-insurance covering the lessee or operator. Nothing in this subparagraph shall be construed to affect the liability of the lessor for its own negligence. . . ." (Emphasis added.)

a lessor's exposure to liability if the lessee complied with certain requirements for liability insurance. Id. The court, however, rejected the plaintiffs' argument, explaining that "not every inducement to lease only to the insured thereby becomes a financial responsibility law. . . . [F]inancial responsibility laws are *legal requirements*, not mere financial inducements imposed by law. Moreover, the inducement [that the plaintiffs relied] upon is . . . premised upon the very vicarious liability [that] the . . . Graves Amendment seeks to eliminate." (Emphasis added.) Id.

Even more recently, in *Meyer* v. *Nwokedi*, supra, 777 N.W.2d 218, the Supreme Court of Minnesota considered whether a Minnesota statute[13] fell within the savings clause because the statute limited liability for car rental companies that had obtained insurance coverage in excess of the minimum amount required of all vehicle owners under state law. Id., 223–24. Like the court in *Garcia*, the Minnesota court determined that the state law did not impose liability for failure to meet insurance like requirements or liability insurance requirements for two reasons. Id., 225–26. First, the legislature used " 'if . . . then . . .' language" providing that, "if" the owner has a certain amount of coverage, "then" the

---

[13] Minn. Stat. § 65B.49, subd. 5a (i) (2008) provides in relevant part: "(2) . . . [A]n owner of a rented motor vehicle is not vicariously liable for legal damages resulting from the operation of the rented motor vehicle in an amount greater than $100,000 because of bodily injury to one person in any one accident and, subject to the limit for one person, $300,000 because of injury to two or more persons in any one accident, and $50,000 because of injury to or destruction of property of others in any one accident, *if* the owner of the rented motor vehicle has in effect, at the time of the accident, a policy of insurance or self-insurance . . . covering losses up to at least the amounts set forth in this paragraph. Nothing in this paragraph alters or affects the obligations of an owner of a rented motor vehicle to comply with the requirements of compulsory insurance through a policy of insurance . . . or through self-insurance . . . . Nothing in this paragraph alters or affects liability, other than vicarious liability, of an owner of a rented motor vehicle." (Emphasis added.)

owner will not be vicariously liable beyond a certain limit. Id., 225. In other words, nothing in the statute *requires* rental vehicle owners to maintain insurance in the designated amount. See id. Second, the last portion of the statute provides that nothing in the statute changes the obligation of rental vehicle owners to comply with the requirements of compulsory insurance, which would be rendered superfluous if the first portion of the statute was construed to be a requirement. Id. The court thus read the Minnesota statute as "allowing insurers to provide extra coverage regardless of *any* provisions that impose minimum coverage requirements." (Emphasis in original.) Id., 226.

The Connecticut statute at issue in the present case provides in relevant part: "Any person renting or leasing to another any motor vehicle owned by him shall be liable for any damage to any person or property caused by the operation of such motor vehicle while so rented or leased, to the same extent as the operator would have been liable if he had also been the owner." General Statutes § 14-154a (a). Such an owner may be shielded from vicarious liability under § 14-154a (b) (1), however, "if the total lease term is for one year or more and if, at the time damages are incurred, the leased vehicle is insured for bodily injury liability in amounts of not less than one hundred thousand dollars per person and three hundred thousand dollars per occurrence . . . ."

The plaintiff claims that § 14-154a falls within the savings clause because the statute imposes liability on long-term lessors that fail to carry the bodily injury insurance coverage specified by the statute at the time of the accident. Daimler Chrysler disagrees on the ground that the statute does not create an affirmative duty to obtain such coverage. We find the analyses in *Garcia* and *Meyer* persuasive and conclude for similar reasons that the state provision in the present case does

not fall within the savings clause[14] because the statute uses the same conditional language used in the Florida and Minnesota statutes. See footnotes 12 and 13 of this opinion.

The Connecticut statute specifically provides in subsection (b) (1) that, "if" the leased or rented vehicle is insured for a certain amount, the provisions of subsection (a) subjecting the owner to vicarious liability will not apply. See General Statutes § 14-154a (b) (1). This is the same kind of inducement language that was found in *Garcia* to fall short of the legal requirement necessary to come within the savings clause. "A policy is a voluntary policy . . . when, in fact, the procurement of the policy is not required by [law]." 7A G. Couch, supra, § 109:70, p. 109-101. The interpretation that the plaintiff advances would require the court to "suppl[y] language that the legislature did not use, such as 'shall have' or 'requirement.' " *Meyer* v. *Nwokedi,* supra, 777 N.W.2d 225. "When statutory language is clear and unambiguous we must presume that it meant what it said." *Trankovich* v. *Frenish, Inc.,* 47 Conn. App. 628, 631, 706 A.2d 998 (1998). "It is well settled that a statute must be applied as its words direct." (Internal quotation marks omitted.) *All Brand Importers, Inc.* v. *Dept. of Liquor Control,* 213 Conn. 184, 194, 567 A.2d 1156 (1989). Accordingly, lack of the word "shall" and use of the word "if" in subsection (b) (1) renders that provision conditional rather than mandatory.

---

[14] Although the trial court relied in part on *Farmers Texas County Mutual* v. *Hertz Corp.,* supra, 282 Conn. 543–44 n.9, and *Moncrease* v. *Chase Manhattan Auto Finance Corp.,* supra, 98 Conn. App. 668 n.1, in concluding that Connecticut no longer imposes vicarious liability on the owners of leased vehicles or rental cars, the relevant passages in those cases providing that the Graves Amendment preempts state law and eliminates vicarious liability under § 14-154a were not part of the holdings in those cases and thus constitute dicta. Accordingly, we conduct our own analysis of the Amendment in order to discern its meaning.

To the extent the plaintiff claims that § 14-154a is an integral part of Connecticut's comprehensive motor vehicle law imposing on owners a responsibility for maintaining insurance on their vehicles because subsection (b) (1) purportedly *requires* lessors to obtain the insurance coverage specified in the statute to avoid vicarious liability, the plaintiff misunderstands that the conditional language in that provision does not impose a legal requirement because it does not *mandate* that lessors procure such coverage as a prerequisite to conducting business. It merely gives them the *option* to do so. Thus, a lessor is not in violation of the law if it chooses not to obtain the specified coverage. The difference between the legal effect of the if-then language in subsection (b) (1) and the mandatory language in other portions of the statutory scheme is striking when the statute is compared with statutory provisions that do impose insurance requirements on the owners or operators of motor vehicles. See, e.g., General Statutes § 14-112 (a) ("[t]o entitle any person to receive or retain a motor vehicle operator's license or a certificate of registration of any motor vehicle . . . the commissioner *shall require* from such person proof of financial responsibility to satisfy any claim for damages by reason of personal injury to, or the death of, any one person, of twenty thousand dollars, or by reason of personal injury to, or the death of, more than one person on account of any accident, of at least forty thousand dollars, and for damage to property of at least ten thousand dollars" [emphasis added]); General Statutes § 38a-371 (a) (1) ("[t]he owner of a private passenger motor vehicle required to be registered in this state *shall provide and continuously maintain* throughout the registration period security in accordance with sections 38a-334 to 38a-343, inclusive" [emphasis added]).

The plaintiff, citing *Universal Underwriters Ins. Co.* v. *Paradis*, 50 Conn. Sup. 486, 500, 940 A.2d 918 (2006),

aff'd, 285 Conn. 342, 940 A.2d 730 (2008), also claims that the Graves Amendment preserves the state vicarious liability law embodied in § 14-154a because the financial responsibility laws to which the savings clause refers include laws that require the procurement of insurance policies in the "minimum amounts specified by statute." According to the plaintiff, these policies must be different from those required for the registration and operation of motor vehicles because the qualifying language in the savings provision of 49 U.S.C. § 30106 (b) (1), which refers to laws "imposing financial responsibility or insurance standards . . . for the privilege of registering and operating a motor vehicle," is absent from the savings provision of 49 U.S.C. § 30106 (b) (2), which does not refer to laws concerning the registration or operation of motor vehicles but to laws imposing liability "for failure to meet the financial responsibility or liability insurance requirements under State law."

This argument fails for several reasons. First, as we previously discussed, § 14-154a (b) (1) does not impose an insurance requirement on the owners of rented or leased vehicles but presents them with an option to choose additional coverage if they seek to avoid vicarious liability. Second, for owners seeking to avoid vicarious liability, the optional coverage provision in subsection (b) (1) of the state statute imposes a minimum level of coverage in excess of that required for the registration and operation of motor vehicles in Connecticut. See General Statutes § 14-112 (a).[15] Third, as

---

[15] General Statutes § 14-112 (a) provides in relevant part: "To entitle any person to receive or retain a motor vehicle operator's license or a certificate of registration of any motor vehicle . . . the commissioner [of motor vehicles] shall require from such person proof of financial responsibility to satisfy any claim for damages by reason of personal injury to, or the death of, any one person, of twenty thousand dollars, or by reason of personal injury to, or the death of, more than one person on account of any accident, of at least forty thousand dollars, and for damage to property of at least ten thousand dollars. . . ."

the court in *Garcia* explained, the savings provision of 49 U.S.C. § 30106 (b) (1) excludes from preemption state laws that "may require insurance or its equivalent as a condition of licensing or registration, or may impose such a requirement after an accident or unpaid judgment"; *Garcia* v. *Vanguard Car Rental USA, Inc.,* supra, 540 F.3d 1249; whereas the savings provision of 49 U.S.C. § 30106 (b) (2) preserves state laws that *"suspend the license and registration of, or otherwise penalize, a car owner who fails to meet the requirement, or who fails to pay a judgment* resulting from a collision." (Emphasis added.) *Garcia* v. *Vanguard Car Rental USA, Inc.,* supra, 1249. Because § 14-154a (b) (1), unlike § 14-112 (a),[16] does none of those things, it cannot be deemed to be preserved.

Fourth, and perhaps most significantly, the plaintiff's interpretation of § 14-154a ignores the effect of the Graves Amendment on the statute's underlying purpose. As we previously noted, subsection (a) of the state statute imposes vicarious liability on the owners of leased or rented vehicles for the negligent acts of their lessees or renters, whereas subsection (b) (1)

---

[16] Indeed, subsection (a) of § 14-112, which is entitled "Proof of financial responsibility," is exactly the type of financial responsibility law that is preserved under the savings provision of 49 U.S.C. § 30106 (b) (1), because subsection (a) not only requires insurance as a condition of licensing or registration but imposes serious penalties on those who fail to obtain it. General Statutes § 14-112 (a) provides in relevant part that, "[i]f any person fails to furnish . . . proof [of the required insurance], the commissioner [of motor vehicles] shall, until such proof is furnished, suspend or revoke the license of such person to operate a motor vehicle or refuse to return any license which has been suspended or revoked in accordance with the provisions of section 14-111 or suspend or revoke the registration of any such motor vehicle or vehicles or refuse thereafter to register any motor vehicle owned by such person or refuse to register any motor vehicle transferred by him if it does not appear to the commissioner's satisfaction that such transfer is a bona fide sale, or, if such person is not a resident of this state, withdraw from such person the privilege of operating any motor vehicle in this state and the privilege of operation within this state of any motor vehicle owned by him. . . ."

shields certain lessors from vicarious liability if they obtain the designated coverage. The inducement in subsection (b) (1) is predicated on the vicarious liability imposed by subsection (a) because a failure to exercise the option of obtaining additional coverage would continue to expose the lessor to vicarious liability. Thus, the plaintiff's interpretation of § 14-154a would render the Amendment meaningless because it would *maintain* the potential for vicarious liability that Congress intended to preempt under the Amendment. The court in *Garcia* noted as much when it explained, with respect to the Florida statute, that, "[i]f [it had] construe[d] the Graves Amendment's savings clause as [the plaintiffs suggested], it would render the preemption clause a nullity. Every vicarious liability suit would be rescued because it could result in a judgment in favor of an accident victim, even though the judgment is premised on the very vicarious liability the Amendment seeks to eliminate. The exception would swallow the rule." *Garcia* v. *Vanguard Car Rental USA, Inc.*, supra, 540 F.3d 1248. Accordingly, we conclude that the Graves Amendment preempts § 14-154a because the state statute does not impose liability on lessors for their failure to meet the type of insurance like requirements contemplated under the savings clause.

## II

The plaintiff claims in the alternative that the Graves Amendment is unconstitutional because it regulates state imposed liability for harm irrespective of whether the intrastate activity is directed at the channels or instrumentalities of interstate commerce. She claims that liability is not commerce or any other sort of economic enterprise and that the link between vicarious liability and its purported effect on interstate commerce is attenuated at best. Daimler Chrysler responds that the Amendment is a valid exercise of Congressional

power under the commerce clause. We agree with Daimler Chrysler.

The constitution of the United States, article one, § 8, provides in relevant part: "The Congress shall have Power . . . To regulate Commerce . . . among the Several States . . . ." The United States Supreme Court has identified "three broad categories of activity that Congress may regulate under its commerce power. . . . First, Congress may regulate the use of the channels of interstate commerce. . . . Second, Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities. . . . Finally, Congress' commerce authority includes the power to regulate those activities having a substantial relation to interstate commerce . . . i.e., those activities that substantially affect interstate commerce . . . ." (Citations omitted.) *United States* v. *Lopez,* 514 U.S. 549, 558–59, 115 S. Ct. 1624, 131 L. Ed. 2d 626 (1995).

Neither the United States Supreme Court nor the Second Circuit has ruled on the constitutionality of the Graves Amendment. Numerous other federal courts have done so, however, and all but one district court have found it to be a proper exercise of the commerce power granted to Congress by the United States constitution. See, e.g., *Garcia* v. *Vanguard Car Rental USA, Inc.,* supra, 540 F.3d 1253; *Kersey* v. *Hirano,* Docket No. WDQ-08-1041, 2009 WL 2151845, *2 (D. Md. July 15, 2009); *Green* v. *Toyota Motor CreditCorp,* supra, 605 F. Sup. 2d 435; *Stampolis* v. *Provident Auto Leasing Co.,* 586 F. Sup. 2d 88, 94 (E.D.N.Y. 2008); *Flagler* v. *Budget Rent A Car System, Inc.,* 538 F. Sup. 2d 557, 559 (E.D.N.Y. 2008); *Berkan* v. *Penske Truck Leasing Canada, Inc.,* 535 F. Sup. 2d 341, 345 (W.D.N.Y. 2008); *Jasman* v. *DTG Operations, Inc.,* 533 F. Sup. 2d 753, 757 (W.D. Mich. 2008); *Dupuis* v. *Vanguard Car Rental*

*USA, Inc.,* 510 F. Sup. 2d 980, 985 (M.D. Fla. 2007); *Seymour* v. *Penske Truck Leasing Co., L.P.,* Docket No. 407CV015, 2007 WL 2212609, *2 (S.D. Ga. July 30, 2007). Contra *Vanguard Car Rental USA, Inc.* v. *Huchon,* 532 F. Sup. 2d 1371, 1382 (S.D. Fla. 2007) (Graves Amendment is unconstitutional); *Vanguard Car Rental USA, Inc.* v. *Drouin,* 521 F. Sup. 2d 1343, 1351 (S.D. Fla. 2007) (same).

These courts generally have concluded that the Graves Amendment fits within the second category of activity that Congress may regulate under its commerce power because car rental companies are "instrumentalities of, and things in, interstate commerce" and "should not be subjected to state by state regulatory regimes that can dramatically burden their operations even if only on an intrastate basis." (Internal quotation marks omitted.) *Green* v. *Toyota Motor CreditCorp,* supra, 605 F. Sup. 2d 435; see also *Stampolis* v. *Provident Auto Leasing Co.,* supra, 586 F. Sup. 2d 95; *Flagler* v. *Budget Rent A Car System, Inc.,* supra, 538 F. Sup. 2d 559–60. They also have concluded that the Amendment fits within the third category because "vicarious liability laws may, in the aggregate, adversely affect the motor vehicle leasing market." *Green* v. *Toyota Motor CreditCorp,* supra, 435; see also *Stampolis* v. *Provident Auto Leasing Co.,* supra, 104; *Flagler* v. *Budget Rent A Car System, Inc.,* supra, 560. This is because leasing companies may cease doing business in states with vicarious liability laws or may increase the cost of leasing cars to consumers in those and other states. *Green* v. *Toyota Motor CreditCorp,* supra, 435–36. Accordingly, we join the overwhelming majority of federal courts that have considered the question and concluded that the Amendment is constitutional.

Insofar as the plaintiff claims that liability is not commerce and that the Graves Amendment seeks to regulate state tort law rather than the rental car market,

her claim has no merit. As the court in *Garcia* noted when the plaintiffs made a similar claim, this is "a distinction without a difference" because the state tort law preempted by the Amendment regulates the rental car market, and the effect of the Amendment is to deregulate that market. *Garcia* v. *Vanguard Car Rental USA, Inc.*, supra, 540 F.3d 1252. The court in *Garcia* further explained: "[I]t has long been understood that the commerce power includes not only the ability to regulate interstate markets, but the ability to facilitate interstate commerce by removing intrastate burdens and obstructions to it. . . . On this theory, the Graves Amendment protects the rental car market by deregulating it, eliminating state-imposed laws and lawsuits Congress reasonably believed to be a burden on an economic activity with substantial effects on commerce. . . . Congress may foster and protect the entire market for rental cars because, in the aggregate, that market substantially affects interstate commerce. [As] long as the underlying economic activity the federal statute aims to protect is within the commerce power, we will not second guess [Congress'] decision that preemption is an appropriate means to achieve proper ends. Rather, Congress may choose any means reasonably adapted to the attainment of the suited end, even though they [involve] control of intrastate activities." (Citations omitted; internal quotation marks omitted.) Id., 1252–53.

The plaintiff suggests that we should follow the substantial effects analysis in *New York* v. *Beretta U.S.A. Corp.*, 524 F.3d 384, 393–95 (2d Cir. 2008) (*Beretta*), cert. denied, 556 U.S. 1104, 129 S. Ct. 1579, 173 L. Ed. 2d 675 (2009), instead of adopting the reasoning of *Garcia*. In *Beretta*, the Second Circuit considered the constitutionality of a federal law[17] that preempted a

---

[17] The federal law, which became effective on October 26, 2005, is the Protection of Lawful Commerce in Arms Act, 15 U.S.C. §§ 7901 through 7903, which provides in relevant part that any "qualified civil liability action that is pending on October 26, 2005, shall be immediately dismissed by the court in which the action was brought or is currently pending." 15 U.S.C.

New York law affecting the interstate firearms industry by precluding civil actions against members of the industry for unlawful acts committed by third parties. Id., 389, 393. The plaintiff in the present case claims that, in its analysis of that issue, the Second Circuit did not determine whether the federal law directly regulated firearms as a " 'thing' " in interstate commerce, as the court in *Garcia* did with respect to the car rental industry, but focused instead on whether tort litigation relating to the firearms industry substantially affected interstate commerce. We disagree. The court in *Beretta*, like the court in *Garcia*, analyzed the issue in question pursuant to the third category of activity that Congress may regulate under its commerce power, namely, the power to regulate activities "having a substantial relation to interstate commerce . . . ." (Internal quotation marks omitted.) Id., 393; see id., 395. Moreover, like the court in *Garcia*, the court in *Beretta* did not view the regulated activity as tort litigation per se but as the firearms industry. See id., 394. The court specifically explained that, "[w]hen enacting the [federal law], Congress explicitly found that the third-party suits that the [federal law] bars are a direct threat *to the firearms industry*, whose interstate character is not questioned. Furthermore, the [federal law] only reaches suits that have an explicit connection with or effect on interstate commerce." (Emphasis added; internal quotation marks omitted.) Id. The court thus concluded that there was no showing that Congress had exceeded its authority when "there [could] be no question of the interstate character of the industry in question and [when] Congress rationally perceived a substantial effect *on the*

§ 7902 (b) (2006). Under an exception to the law, however, a civil action may proceed when a plaintiff adequately alleges that a "manufacturer or seller of [firearms transported in interstate or foreign commerce] knowingly violated a State or Federal statute applicable to the sale or marketing of [firearms], and the violation was a proximate cause of the harm for which relief is sought . . . ." 15 U.S.C. § 7903 (5) (A) (iii) (2006).

*industry* of the litigation that the [federal law sought] to curtail." (Emphasis added.) Id., 395. Just as the regulated activity in *Garcia* was the rental car industry rather than the Florida state law concerning vicarious liability, the regulated activity in *Beretta* was the firearms industry rather than New York state law concerning tort litigation. Accordingly, the plaintiff's unsupported claim must fail.

We thus conclude that, because the Graves Amendment preempts state law and is a valid exercise of Congressional authority under the commerce clause of the United States constitution, the trial court properly granted Daimler Chrysler's summary judgment motion.

The judgment is affirmed.

In this opinion the other justices concurred.