******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

KEVIN J. MENARD *v.* WILLIMANTIC WASTE PAPER
COMPANY ET AL.
(AC 37252)

Beach, Sheldon and Harper, Js.

*Argued October 21, 2015—officially released March 1, 2016*

(Appeal from the Workers' Compensation Review
Board.)

*Howard B. Schiller*, with whom was *G. Randal Hornaday*, for the appellant (plaintiff).

*David J. Weil*, with whom, on the brief, was *Natalie
E. Wayne*, for the appellees (defendants).

*Opinion*

BEACH, J. A factor in determining an injured employee's wage replacement benefit is the employee's average weekly wage, generally computed, pursuant to General Statutes § 31-310, by dividing the total compensation received in the year prior to the injury by the number of weeks of employment within that year. The issue in this case is whether weeks for which an employee has received vacation pay, and was not physically at work, are to be included in the divisor of the formula.

The plaintiff, Kevin J. Menard, appeals from the decision of the Workers' Compensation Review Board (board) affirming the finding and award of the Workers' Compensation Commissioner for the Second District (commissioner) in favor of the defendants, his employer, Willimantic Waste Paper Company (employer), and the employer's insurer, EMC Insurance Company. On appeal, the plaintiff claims that the board erred by including paid vacation time into the divisor of the formula for calculating average weekly wage under § 31-310. We disagree and therefore affirm the decision of the board.

The parties stipulated to the following facts before the commissioner. During the relevant fifty-two week period prior to the plaintiff's injury, from the week of March 17, 2010 to the week of March 11, 2011, the plaintiff's wages totaled $53,131.91. During that time period, the plaintiff was compensated for a total of 112 vacation hours. The plaintiff was compensated at a rate of $16.99 per hour for forty[1] vacation hours and eight hours of holiday pay, during both the week ending on July 7, 2010, and the week ending on September 8, 2010.[2] The plaintiff did not perform any labor for his employer during those two weeks. During the week ending on November 24, 2010, the plaintiff received vacation pay and also worked and was paid for forty hours.

The plaintiff's position before the commissioner was that his pay for the two weeks for which he received vacation pay, during which he was not working, should be included in the amount of total wages, but in order to calculate the average weekly wage, the total amount of wages should be divided by fifty, rather than fifty-two, because he did not perform work during the two paid vacation weeks. The defendants' position was that the pay for the two weeks of paid vacation should be included in the amount of total wages and that the amount of earnings should be divided by fifty-two in order to calculate the average weekly wage.[3] The commissioner agreed with the defendants in determining that "[t]here is no reason to eliminate any wages received or to eliminate any weeks of employment as the [plaintiff] was employed and received wages from the [employer] throughout the entire 52 week period preceding his injury, including the periods of paid vaca-

tion, and did not have any absences for seven consecutive days not in the same calendar week." The commissioner found the average weekly wage to be $1022, and, after making required adjustments, found the compensation rate to be $584.92 per week.

In his appeal to the board, the plaintiff claimed that the commissioner misapplied § 31-310 (a) when he calculated the average weekly wage by dividing the total amount of wages by fifty-two. He argued that the two weeks of paid vacation time should not have been included in the divisor of the formula because § 31-310 (a) provides that where there has been an "absence of seven consecutive calendar days," the week is to be subtracted from the divisor. The board disagreed, stating that "the purpose of § 31-310 (a) . . . is to ensure that the parties arrive at a fair and equitable average weekly wage which accurately reflects both the total wages paid to the claimant and the number of weeks for which these wages were paid. In light of this interpretation, we reject the notion that the statute requires that *every* seven-day absence from the workplace, whether paid or unpaid, necessarily merits exclusion from the wage calculations. Under the facts of this matter, excluding the weeks for which the [plaintiff] was paid, albeit in the form of vacation pay rather than regular wages, would be sharply at variance with the underlying purpose of the statute and . . . would essentially penalize employers for granting this benefit . . . ." The board affirmed the finding and award of the commissioner. This appeal followed.

"As a threshold matter, we set forth the standard of review applicable to workers' compensation appeals. The principles that govern our standard of review in workers' compensation appeals are well established. The conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . It is well established that [a]lthough not dispositive, we accord great weight to the construction given to the workers' compensation statutes by the commissioner and [the] board. . . . A state agency is not entitled, however, to special deference when its determination of a question of law has not previously been subject to judicial scrutiny . . . or when its construction of a statute has not been time-tested." (Citation omitted; internal quotation marks omitted.) *Gill* v. *Brescome Barton, Inc.*, 317 Conn. 33, 42, 114 A.3d 1210 (2015). In this case, we are required to interpret language of § 31-310 (a) that has not been previously subject to judicial scrutiny. Thus, the decision of the board is not entitled to special deference,[4] and we turn our focus to the basic tenets of statutory construction.

This appeal involves a legal question regarding the statutory interpretation of § 31-310 (a), which provides

in relevant part: "[T]he average weekly wage shall be ascertained by dividing the total wages received by the injured employee from the employer in whose service the employee is injured during the fifty-two calendar weeks immediately preceding the week during which the employee was injured, by the number of calendar weeks during which, or any portion of which, the employee was actually employed by the employer, but, in making the computation, absence for seven consecutive calendar days, although not in the same calendar week, shall be considered as absence for a calendar week. When the employment commenced otherwise than at the beginning of a calendar week, that calendar week and wages earned during that week shall be excluded in making the computation. . . ."

Questions of statutory interpretation are subject to plenary review by this court. See *State* v. *Courchesne*, 296 Conn. 622, 668, 998 A.2d 1 (2010). "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to determine that meaning [we] first . . . consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *Chairperson, Connecticut Medical Examining Board* v. *Freedom of Information Commission*, 310 Conn. 276, 283, 77 A.3d 121 (2013).

The plaintiff claims that the board erred in its calculation of average weekly wage because the plain language of § 31-310 (a) mandates the exclusion of all periods of absence of seven consecutive days, including those absences for paid vacation, from the number of weeks used in the calculation of average weekly wage. He argues that the phrase "absence for seven consecutive days" in § 31-310 (a) is not ambiguous and dictates that his vacation related seven consecutive day absences should be subtracted, leaving the total amount of wages received during the fifty-two calendar weeks preceding his injury to be divided by fifty. Dividing by fifty, of course, results in a higher average weekly wage than dividing by fifty-two.

Section 31-310 (a) provides that the average weekly wage is computed by dividing the total wages received

during the fifty-two week period preceding the injury by the number of calendar weeks during which the injured employee was "actually employed," with the exception of an "absence" for seven consecutive calendar days. It is uncontested that the plaintiff was employed by, and received wages in the amount of $53,131.91 from, the employer for the entire fifty-two week period preceding his injury. The amount of compensation included the two weeks of vacation pay at issue.[5] The statute clearly states that the total wages are to be divided by the number of calendar weeks that the employee was "actually employed" which, here, is fifty-two. The dispute is whether the two weeks of paid vacation constitute an "absence" for seven consecutive calendar days that must be subtracted from the divisor.

Both the plaintiff and the defendants argue that the statutory language is clear and unambiguous, and both offer different, yet linguistically plausible, interpretations. The plaintiff contends that § 31-310 (a) mandates that all absences for seven consecutive days, including the two weeks at issue, be deducted from the divisor.[6] The plaintiff stresses that, regardless of whether this construction may seem somewhat implausible, the language of the statute literally compels this construction.[7] The defendants counter that the qualifying language "although not in the same calendar week" renders the language "an absence for seven consecutive days" inapplicable to the present case, as "split weeks" are not involved here. They also argue that the statute does not expressly mandate that weeks in which the plaintiff is not physically present at work, but paid as if he were engaged in his normal employment, be excluded. Because both interpretations are superficially plausible, we conclude that the statutory language is ambiguous.

The legislative history of § 31-310 is not helpful. In 1961, the General Assembly enacted No. 491 of the 1961 Public Acts, which amended the Workers' Compensation Act, General Statutes § 31-275 et seq., that had been first enacted in 1913. The legislative history does not illuminate the specifics of the language at issue in § 31-310. Some guidance has been provided by our Supreme Court, which has stated that the adjustment of weeks in the divisor "presumably . . . temper[s] seasonal and temporary effects . . . ." *Smith* v. *Yurkovsky*, 265 Conn. 816, 828, 830 A.2d 743 (2003).[8]

The language of the statute as a whole provides context for the specific language at issue. The statute establishes the formula for determining average weekly wage and defines the dividend and divisor. The term "average" is defined by Webster's Third New International Dictionary (2002) as "an arithmetical term to indicate the figure arrived at by finding the sum of a given number of unequal figures and dividing by the number of figures . . . ." The plaintiff argues that the two weeks of paid vacation, each of which included one day of

holiday pay, should be considered an "absence" under the statute. This interpretation leads to bizarre results: for instance, not performing work related tasks for one's employer during paid vacation increases the average weekly wage, while performing activities benefiting the employer during that time decreases the compensation rate.[9] The plaintiff's proffered interpretation unduly complicates the determination of the average weekly wage. Under the plaintiff's interpretation, the amount of pay received by him from his employer for the two weeks of paid vacation would be included in the dividend, but the same two weeks would be subtracted from the divisor, thereby artificially inflating the average.[10] A logical interpretation of the phrase "*average weekly wage*" contemplates that all wages earned by the plaintiff in the relevant time period are to be included in the dividend and that all weeks in which the plaintiff was "actually employed" and earning wages are to be included in the divisor.[11]

This court's interpretation of § 31-310 in *Trankovich* v. *Frenish, Inc.*, 47 Conn. App. 628, 706 A.2d 998 (1998), is informative. In *Trankovich*, we held that § 31-310 commands that average weekly wage be determined by "adding the total wages received" by the plaintiff from the employer "during the fifty-two calendar weeks immediately preceding the week during which [the plaintiff] was injured and dividing by the number of calendar weeks during which [the plaintiff] was actually employed by the employer." Id., 631. In order to avoid bizarre and unworkable results; see *Sanzone* v. *Board of Police Commissioners*, 219 Conn. 179, 187, 592 A.2d 912 (1991) (statutory constructions that lead to absurd, unworkable or bizarre results to be avoided); we conclude that the conclusion of the board was reasonable.

The decision of the Workers' Compensation Review Board is affirmed.

In this opinion the other judges concurred.

[1] The commissioner's original decision stated the number of vacation hours as "4." The plaintiff filed a motion to correct the scrivener's error to reflect the proper number of vacation hours, which was forty. The motion was granted as to this request.

[2] The commissioner found that the two weeks of paid vacation time provided to the plaintiff by his employer either had to be used as paid vacation or the time would be forfeited.

[3] The defendants argued before the commissioner, in the alternative, that the two weeks of paid vacation should not be included in calculating total wages and that amount should be divided by fifty in order to determine the average weekly wage. The commissioner did not agree with this alternative position.

[4] The defendants have not argued that the board's construction of § 31-310 (a) has been tested by time.

[5] The compensation for the third week of paid vacation during which the plaintiff also worked was included by the board in total wages, and the week was not subtracted from the divisor. The plaintiff does not contest the board's conclusion regarding the third week. Additionally, the parties do not contest the board's inclusion of vacation pay in the calculation of total compensation, and, thus, we do not review this issue. See *Luce* v. *United Technologies Corp.*, 247 Conn. 126, 141–42, 717 A.2d 747 (1998) (leaving issue of whether vacation pay is included in "wages" under § 31-310 undecided where issue not properly before court).

[6] The plaintiff makes several additional arguments that relate to the reasoning used by the board in reaching its decision. We have considered these arguments, subsets of the primary argument, but do not discuss them individually.

[7] The plaintiff seems to suggest that when an employer provides for paid vacation time, the employer is really compensating only for nonvacation weeks, and functionally is simply spreading out the paychecks evenly over the full year.

[8] An obvious purpose of subtracting from the divisor weeks during which an employee has not worked is to address equitably situations in which an employee does not get paid when he or she does not work.

[9] The construction advanced by the plaintiff introduces, as well, several conundrums. For example, if an employee is away from work for a week and receiving vacation pay, but nonetheless is engaged electronically, does the week count in the divisor of the calculation of average weekly wage?

[10] In the context of unpaid leave or absence from work, or periods of no employment at all, neither the pay nor the weeks are used in the statutory formula.

[11] We make no determination on whether vacation pay constitutes wages for purposes of § 31-310. See footnote 5 of this opinion.

—————————————————————