Nancy M. MEYER, as trustee for the heirs of Margaret Mphosi, deceased, et al., and Nancy M. Meyer, as guardian ad litem for Lucas Mphosi, injured, et al., Appellant,

and

Bunmi Obembe, et al., Intervenors,

v.

Bibian NWOKEDI, Defendant,

Enterprise Rent A Car Co. of Montana/Wyoming, d/b/a Enterprise Rent A Car of the Dakotas/Nebraska, Respondent.

No. A08–250.

Supreme Court of Minnesota.

Jan. 14, 2010.

Duane A. Lillehaug, Maring Williams Law Office, P.C., Craig Richie, Richie & Associates, Fargo, ND, Andre Mura, Center for Constitutional Litigation, P.C., Washington, D.C.; for appellant.

Theodore J. Smetak, Paul E.D. Darsow, Arthur, Chapman, Kettering, Smetak & Pikala, P.A., Minneapolis, MN, for respondent.

Lori Swanson, Attorney General, John S. Garry, Assistant Attorney General, St. Paul, MN, for amicus curiae State of Minnesota.

Michael L. Weiner, Yaeger, Jungbauer & Barczak, PLC, Minneapolis, MN, for amicus curiae Minnesota Association for Justice.

Richard P. Schweitzer, Craig M. Cibak, Richard P. Schweitzer, PLLC, Washington, D.C., for amicus curiae Truck Renting and Leasing Association, Inc.

## OPINION

DIETZEN, Justice.

Appellant Nancy Meyer, who is trustee of the heirs of decedents Margaret Mphosi and Joshua Mphosi and guardian ad litem for Lucas Mphosi and Jehoshophat Mphosi, commenced this action to recover damages arising out of a single-vehicle accident. The lawsuit alleged that respondent Enterprise Rent A Car Co. of Montana/Wyoming, d/b/a Enterprise Rent A Car of Dakotas/Nebraska (Enterprise), as owner of the rental vehicle involved in the accident, was vicariously liable for the driver's negligence. Enterprise moved for summary judgment arguing, among other things, that Meyer's claim for vicarious liability was barred by the Graves Amendment, 49 U.S.C. § 30106 (2006). The district court granted summary judgment in favor of Enterprise, and the court of appeals affirmed. *Meyer v. Nwokedi*, 759 N.W.2d 426, 432 (Minn.App.2009). We granted review and affirm.

The material facts are undisputed. Maboko Mphosi (Mr. Mphosi) rented a sport utility vehicle (SUV) from Enterprise in Fargo, North Dakota, on June 4, 2004.

The next day the SUV was involved in a single-vehicle accident on I–94 near Fergus Falls, Minnesota, which resulted in the deaths of Mr. Mphosi's wife, Margaret Mphosi, and their son, Joshua Mphosi, as well as injuries to their sons, Lucas Mphosi and Jehoshophat Mphosi.[1] At the time of the accident, Bibian Nwokedi was driving the SUV with the permission of Mr. Mphosi.

Meyer was named trustee for the heirs and next of kin of the decedents Margaret Mphosi and Joshua Mphosi and guardian ad litem for the injured minors Lucas Mphosi and Jehoshophat Mphosi. Subsequently Meyer commenced this action against Nwokedi and Enterprise to recover damages arising out of the accident. Meyer's complaint alleged that Nwokedi was negligent and that Enterprise was vicariously liable for the deaths and injuries caused by the negligent operation of the rental vehicle involved in the accident. The vicarious liability claim was premised on Minn.Stat. § 65B.49, subd. 5a(i)(2) (2006), which caps vicarious liability for rental-vehicle owners, and Minn.Stat. § 169.09, subd. 5a (2008), which, in relevant part, imposes vicarious liability on rental-vehicle owners. Additionally, Meyer's complaint alleged that Enterprise negligently entrusted the rental vehicle to Mr. Mphosi and that Enterprise was negligent.

Enterprise moved for summary judgment, arguing that (1) Meyer's vicarious liability claim should be dismissed as a matter of law because the Graves Amendment, a federal statute that preempts state laws imposing vicarious liability on rental-vehicle owners, preempts Minn.Stat. §§ 65B.49, subd. 5a(i)(2), and 169.09, subd. 5a, and (2) Meyer's negligent entrustment

and negligence claims should be dismissed as a matter of law because Meyer failed to produce any evidence to support those claims. Meyer and Nwokedi both opposed Enterprise's motion for summary judgment. The district court agreed with Enterprise, however, and granted summary judgment in favor of Enterprise.

Although Enterprise's motion for summary judgment was granted, the claim against Nwokedi was still pending and Enterprise acknowledged its obligation to defend and indemnify Nwokedi; therefore, the parties entered into a settlement agreement to facilitate an appeal. In the agreement, Enterprise, as self-insurer[2] of the rental vehicle involved in the accident, deposited $60,000 with the district court based on the minimum insurance liability requirements of Minn.Stat. § 65B.49, subd. 3 (2008). In exchange, Meyer agreed to dismiss with prejudice and without costs "all claims in this lawsuit" with the exception of her vicarious liability claim against Enterprise.

Meyer then appealed the district court's grant of summary judgment for Enterprise. The court of appeals affirmed, holding that the Graves Amendment preempts Minn.Stat. § 65B.49, subd. 5a(i)(2), and Minn.Stat. § 169.09, subd. 5a, insofar as both of those state laws impose vicarious liability on rental-vehicle owners. *Meyer*, 759 N.W.2d at 432.

## I.

Meyer argues that the district court erred in granting Enterprise's motion for summary judgment, particularly by dismissing her vicarious liability claim on the ground that it was preempted by the Graves Amendment. Meyer concedes that

---

1. Two other passengers, Bunmi and Christopher Obembe, were also injured in the accident; they intervened in Meyer's action.

2. It is undisputed that Enterprise meets the obligations for self-insurers mandated by Minn.Stat. § 65B.48, subd. 3 (2004).

her vicarious liability claim fits within the express preemption clause of the Graves Amendment, but argues that, under the savings clause of the Graves Amendment, her vicarious liability claim is excluded from preemption.

■ Summary judgment is properly granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to judgment as a matter of law." Minn. R. Civ. P. 56.03. Whether federal law preempts state law is an issue of statutory interpretation, which we review de novo. *In re Estate of Barg*, 752 N.W.2d 52, 63 (Minn.2008).

■ The Supremacy Clause of the United States Constitution provides that the "Constitution, and the Laws of the United States ... made in Pursuance thereof ..., shall be the supreme Law of the Land." U.S. Const. art. VI, cl. 2. In determining if a federal law preempts a state law, "[c]ongressional purpose is 'the ultimate touchstone.'" *Barg*, 752 N.W.2d at 63 (citation omitted). Congressional intent to preempt state laws may be express or implied. *In re Qwest's Wholesale Serv. Quality Standards*, 702 N.W.2d 246, 250 (Minn.2005). Preemption is generally disfavored, particularly if state laws regulating "the historic police powers of the States" are implicated. *Barg*, 752 N.W.2d at 63. Indeed, if "the text of a pre-emption clause is susceptible of more than one plausible reading, courts ordinarily 'accept the reading that disfavors pre-emption.'" *Altria Group, Inc. v. Good*, ── U.S. ──, 129 S.Ct. 538, 543, 172 L.Ed.2d 398 (2008) (quoting *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 449, 125 S.Ct. 1788, 161 L.Ed.2d 687 (2005)). Therefore, state laws are not preempted "unless that [is] the clear and manifest purpose of Congress."

*Barg*, 752 N.W.2d at 63 (citation omitted) (internal quotation marks omitted). But when "Congress expressly preempts state action, the matter is settled." *Risdall v. Brown–Wilbert, Inc.*, 753 N.W.2d 723, 728 (Minn.2008).

The Graves Amendment was enacted on August 10, 2005, as part of a comprehensive transportation bill known as the Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users (the Act), Pub.L. No. 109–59, 119 Stat. 1144 (2005). The Act deals generally with motor vehicle safety, primarily providing billions of dollars in funding allocations for transportation projects. *Id.; see generally* Susan Lorde Martin, *Commerce Clause Jurisprudence and the Graves Amendment: Implications for the Vicarious Liability of Car Leasing Companies*, 18 U. Fla. J.L. & Pub. Pol'y 153, 163 (2007). The Act also contains a provision, known as the Graves Amendment, which preempts state laws imposing vicarious liability on lease- or rental-vehicle owners. 49 U.S.C. § 30106.

The Graves Amendment has both an express preemption clause and a savings clause. The preemption clause states:

> An owner of a motor vehicle that rents or leases the vehicle to a person ... shall not be liable under the law of any State ... by reason of being the owner of the vehicle ... for harm to persons or property that results or arises out of the use, operation, or possession of the vehicle during the period of the rental or lease, if
>
> > (1) the owner ... is engaged in the trade or business of renting or leasing motor vehicles; and
> >
> > (2) there is no negligence or criminal wrongdoing on the part of the owner. . . .

49 U.S.C. § 30106(a). It is undisputed that Meyer's vicarious liability claim fits within the scope of the express preemption clause of the Graves Amendment. Specifically, Enterprise is engaged in the business of renting motor vehicles, and did not engage in negligence or criminal wrongdoing. *See id.* Consequently, the express preemption clause of the Graves Amendment is applicable and, without more, would preempt Meyer's lawsuit.[3]

Meyer argues that her vicarious liability claim is predicated on a "financial responsibility or liability insurance requirement" of Minnesota law, and therefore is excluded from preemption under the savings clause of the Graves Amendment. The savings clause provides:

> Nothing in this section supersedes the law of any State ...
>
> (1) imposing financial responsibility or insurance standards on the owner of a vehicle for the privilege of registering and operating a motor vehicle; or
>
> (2) imposing liability on business entities engaged in the trade or business of renting or leasing motor vehicles for failure to meet the financial responsibility or liability insurance requirements under State law.

49 U.S.C. § 30106(b).[4]

According to Meyer, Minn.Stat. §§ 65B.49, subd. 5a(i)(2), and 169.09, subd. 5a, impose liability on rental-vehicle owners for failure to meet "financial responsibility or liability insurance requirements" under Minnesota law, and thus are excluded from preemption under the (b)(2) savings clause. Meyer concedes that the (b)(1) savings clause does not save these statutes from preemption; rather, Meyer relies exclusively on the (b)(2) savings clause.[5] Enterprise counters that Minn. Stat. §§ 65B.49, subd. 5a(i)(2), and 169.09, subd. 5a, do not impose liability on rental-vehicle owners for failure to meet "financial responsibility or liability insurance requirements" within the meaning of the (b)(2) savings clause. Thus, we must determine the meaning of "financial responsibility or liability insurance requirements" under the (b)(2) savings clause and whether Minn.Stat. §§ 65B.49, subd. 5a(i)(2), and 169.09, subd. 5a, fit within that meaning.

## A. The (b)(2) Savings Clause

When interpreting a federal statute, the court must "give effect to the plain meaning of a statute when the language is clear." *Martin v. City of Rochester,* 642 N.W.2d 1, 11 (Minn.2002) (citing *Robinson v. Shell Oil Co.,* 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997)). "Financial responsibility," as used in the savings clause, is not defined by 49 U.S.C. § 30106(d) or 49 U.S.C. § 30102 (2006) (both providing definitions for the Graves Amendment).

In *Garcia v. Vanguard Car Rental USA, Inc.,* the United States Court of Appeals for the Eleventh Circuit interpreted the meaning of the phrase "financial responsibility" in the Graves Amendment to determine whether a Florida wrongful death action was preempted. 540 F.3d

---

**3.** The Graves Amendment applies to "any action commenced on or after the date of enactment of this section." 49 U.S.C. § 30106(c). The Graves Amendment was enacted on August 10, 2005, and Meyer commenced this action on June 2, 2006.

**4.** For ease of reference, 49 U.S.C. § 30106(b)(1) is referred to as "the (b)(1) sav-

ings clause" and 49 U.S.C. § 30106(b)(2) is referred to as "the (b)(2) savings clause."

**5.** Because Meyer concedes that the (b)(1) savings clause does not support her claim, that issue is not before us, and therefore we decline to examine it.

1242 (11th Cir.2008), *cert. denied,* —— U.S. ——, 129 S.Ct. 1369, 173 L.Ed.2d 591 (2009). The court concluded that Congress used "financial responsibility . . . to denote state laws which impose insurance-like requirements." *Id.* at 1247–48. Relying on the pairing of the terms "financial responsibility or liability insurance requirements" and the common legal usage of the term "financial responsibility," *Garcia* defined "insurance-like requirements" as the "financial equivalent" of insurance. *Id.* at 1247–48; *see also generally* Michael K. Steenson, *Minnesota No–Fault Automobile Insurance* § 1.01 (3d ed.2007).

■ The parties do not dispute that the phrase "financial responsibility" in the Graves Amendment refers to insurance-like requirements under state law. We agree with *Garcia* and conclude that "financial responsibility" refers to insurance-like requirements under state law. Additionally, the phrase "financial responsibility" appears to modify the word "requirement" in the (b)(2) savings clause, thereby supporting the conclusion that "financial responsibility" refers to insurance-like requirements.

■ In summary, the Graves Amendment preempts state laws that impose vicarious liability on rental-vehicle owners, but the (b)(2) savings clause excludes from preemption state laws that impose liability on rental-vehicle owners for failure to meet insurance-like requirements or liability insurance requirements under state law. *See* 49 U.S.C. § 30106. Therefore, to satisfy the (b)(2) savings clause, Meyer must establish that Minn.Stat. §§ 65B.49, subd. 5a(i)(2), and 169.09, subd. 5a, impose liability on rental-vehicle owners for failure to meet insurance-like requirements or liability insurance requirements.

### B. Minnesota Statutes § 65B.49, subd. 5a(i)(2)

■ The goal of all statutory construction is to "ascertain and effectuate the intention of the legislature." Minn.Stat. § 645.16 (2008); *see also Am. Fam. Ins. Group v. Schroedl,* 616 N.W.2d 273, 278 (Minn.2000). Every statute "shall be construed, if possible, to give effect to all its provisions." Minn.Stat. § 645.16; *see also Schroedl,* 616 N.W.2d at 277. In construing a statute, "words and phrases are construed according to rules of grammar and according to their common and approved usage." Minn.Stat. § 645.08 (2008); *see also Schroedl,* 616 N.W.2d at 277. And "courts cannot supply that which the legislature purposely omits." *Wallace v. Comm'r of Taxation,* 289 Minn. 220, 230, 184 N.W.2d 588, 594 (1971).

■ The crux of the dispute is whether Minn.Stat. § 65B.49, subd. 5a(i)(2), imposes liability on Enterprise for failure to meet insurance-like requirements or liability insurance requirements. Meyer and Enterprise agree that Minn.Stat. § 65B.49, subd. 3, imposes "liability insurance requirements," in the amounts of $30,000 per person and $60,000 per accident on all vehicle owners.[6] But Meyer argues that Minn.Stat. § 65B.49, subd. 5a(i)(2), imposes *higher* "liability insurance requirements" on rental-vehicle owners by requiring them to maintain residual liability insurance in the amounts of $100,000 per person and $300,000 per accident.[7]

---

**6.** Enterprise has deposited $60,000 with the district court to satisfy any obligations imposed by Minn.Stat. § 65B.49, subd. 3. Therefore, whether Minn.Stat. § 65B.49, subd. 3, is preempted by the Graves Amendment is not before us and we decline to reach that issue.

**7.** These limits have been adjusted for inflation to $115,000 per person and $350,000 per accident. *See* Minn.Stat. § 65B.49, subd. 5a(i)(3) (2008).

Enterprise counters that Minn.Stat. § 65B.49, subd. 5a(i)(2), does not impose higher "liability insurance requirements" on rental vehicle owners; rather, Minn. Stat. § 65B.49, subd. 5a(i)(2), provides rental-vehicle owners with a vicarious liability cap.

Minnesota Statutes § 65B.49, subd. 5a(i)(2) (2006), provides:

Notwithstanding section 169.09, subdivision 5a, an owner of a rented motor vehicle is not vicariously liable for legal damages resulting from the operation of the rented motor vehicle in an amount greater than $100,000 because of bodily injury to one person in any one accident and ... $300,000 because of injury to two or more persons in any one accident ... if the owner ... has in effect, at the time of the accident, a policy of insurance or self-insurance, as provided in section 65B.48, subdivision 3, covering losses up to at least the amounts set forth in this paragraph.... Nothing in this paragraph alters or affects the obligations of an owner of a rented motor vehicle to comply with the requirements of compulsory insurance through a policy of insurance as provided in section 65B.48, subdivision 2, or through self-insurance as provided in section 65B.48, subdivision 3.... Nothing in this paragraph alters or affects liability, other than vicarious liability, of an owner of a rented motor vehicle.

Based on the plain language of the statute, Minn.Stat. § 65B.49, subd. 5a(i)(2), does not impose liability for failure to meet insurance-like requirements or liability insurance requirements. Instead, Minn. Stat. § 65B.49, subd. 5a(i)(2), provides rental-vehicle owners with the option of capping potential vicarious liability for le-

gal damages resulting from the operation of a rental vehicle if the owner provides insurance coverage in the amounts of $100,000 per person and $300,000 per accident. Two reasons support our conclusion. First, the legislature uses "if ... then ..." language in the statute. Specifically, subdivision 5a(i)(2) provides that *if* a rental-vehicle owner has insurance "covering losses up to at least the amounts set forth in this paragraph," *then* the rental-vehicle owner "is not vicariously liable ... in an amount greater than" $100,000 per person and $300,000 per accident. Meyer is correct that when a rental-vehicle owner does not elect to obtain coverage at the higher limits under Minn.Stat. § 65B.49, subd. 5a(i)(2), the consequence is potentially unlimited vicarious liability. But nothing in Minn.Stat. § 65B.49, subd. 5a(i)(2), *requires* rental-vehicle owners to maintain insurance in the amounts of $100,000 per person and $300,000 per accident. Meyer's proposed interpretation supplies language that the legislature did not use, such as "shall have" or "requirement." *See Wallace*, 289 Minn. at 230, 184 N.W.2d at 594 (concluding that courts cannot supply language that the legislature did not use).

Second, the last portion of subdivision 5a(i)(2) provides that "[n]othing in this paragraph alters or affects the obligations of [rental-vehicle owners] to comply with the requirements of compulsory insurance," which are set forth in Minn.Stat. § 65B.49, subd. 3, in the amounts of $30,000 per person and $60,000 per accident.[8] Meyer's proposed interpretation that subdivision 5a(i)(2) requires rental-vehicle owners to maintain higher "liability insurance requirements" renders this portion of the statute superfluous. Specifically, it would not be necessary to clarify that

---

8. Subdivision 5a(i)(2) refers to Minn.Stat. § 65B.48, subds. 2 and 3, which apply to self-insurance and a policy of insurance. Subdivi-

sion 3 requires that self-insurers meet the applicable minimum mandatory limits set forth in Minn.Stat. § 65B.49, subd. 3.

rental-vehicle owners are obligated to provide coverage in the amounts of $30,000 per person and $60,000 per accident if they are obligated to provide coverage for *higher* amounts. Our interpretation of Minn. Stat. § 65B.49, subd. 5a(i)(2), as a vicarious-liability cap gives effect to the entire statute, including the last portion. *See Schroedl,* 616 N.W.2d at 277 (concluding that when interpreting statutes, "no word, phrase, or sentence should be deemed superfluous, void, or insignificant").

Meyer argues that Minn.Stat. § 65B.49 generally addresses "liability insurance requirements," and therefore every provision of Minn.Stat. § 65B.49 should be construed as imposing "liability insurance requirements." Meyer points to subdivision 7, which states that "[n]othing in sections 65B.41 to 65B.71 shall be construed as preventing the insurer from offering other benefits or coverages in addition to those required to be offered under this section."

We read subdivision 7 as allowing insurers to provide extra coverage regardless of *any* provisions that impose minimum coverage requirements. The word "required" in subdivision 7 does not, *ipso facto,* mean that *every* provision of Minn.Stat. § 65B.49 imposes "liability insurance requirements." Put differently, the general language of subdivision 7 does not transform the more specific language of subdivision 5a(i)(2) into a statute that imposes liability on rental-vehicle owners for failure to meet insurance-like requirements or liability insurance requirements.

Meyer also argues that the 2007 amendments to Minn.Stat. § 65B.49, subd. 5a(i)(2), support her interpretation of the statute. Prior to the 2007 amendments, when a rental vehicle was involved in an accident, the owner's insurance policy provided primary coverage, and the permissive driver's insurance policy provided secondary coverage. *See Hertz Corp. v. State* *Farm Mut. Ins. Co.,* 573 N.W.2d 686, 691 (Minn.1998). The 2007 amendments shifted responsibility for primary coverage from rental-vehicle owners to permissive drivers, with rental-vehicle owners providing secondary coverage. *See* Act of May 14, 2007, ch. 72, § 1, 2007 Minn. Laws 517, 519 (providing that a rental-vehicle owner's insurance policy "must apply whenever [a permissive driver] is not covered by" an insurance policy). According to Meyer, the 2007 amendments manifest the legislature's intent that Minn.Stat. § 65B.49, subd. 5a(i)(2), impose "liability insurance requirements."

We conclude that the 2007 amendments are not helpful to the resolution of this dispute for two reasons. First, the 2007 amendments are not applicable to this case because the amendments were not in effect when Meyer commenced her lawsuit. *See* Act of May 14, 2007, ch. 72, § 1, 2007 Minn. Laws 517, 519. Second, the 2007 amendments address priority of coverage, not whether subdivision 5a(i)(2) imposes liability on rental-vehicle owners for failure to meet "liability insurance requirements." Thus, the 2007 amendments do not address whether Minn.Stat. § 65B.49, subd. 5a(i)(2), is preempted by the Graves Amendment.

In summary, we conclude that Minn. Stat. § 65B.49, subd. 5a(i)(2), does not set forth "liability insurance requirements" applicable to rental-vehicle owners and does not impose liability on rental-vehicle owners for failure to meet insurance-like requirements or liability insurance requirements within the meaning of the (b)(2) savings clause. Rather, Minn.Stat. § 65B.49, subd. 5a(i)(2), offers rental-vehicle owners an opportunity to limit their exposure to vicarious liability claims by providing insurance in the amounts of $100,000 per person and $300,000 per accident. Therefore, Meyer's vicarious liabili-

ty claim, which is predicated on Minn.Stat. § 65B.49, subd. 5a(i)(2), is preempted by the Graves Amendment.[9]

## C. Minnesota Statutes § 169.09, subd. 5a

■ Meyer argues that Minn.Stat. § 169.09, subd. 5a, when considered in the context of the Minnesota No–Fault Act, imposes liability on rental-vehicle owners for failure to meet insurance-like requirements or liability insurance requirements, and therefore is excluded from preemption under the (b)(2) savings clause. Specifically, Meyer argues that the remedial purpose of the No–Fault Act requires that we read Minn.Stat. § 169.09, subd. 5a, in pari materia with Minn.Stat. § 65B.49, subd. 5a(i)(2). *See, e.g.,* Minn.Stat. § 65B.42(1) (2008) (the No–Fault Act is intended to "relieve the severe economic distress of uncompensated victims of automobile accidents").

■ We agree that the Minnesota No–Fault Act serves an important remedial purpose. But its remedial purpose is not relevant unless we conclude that Minn. Stat. § 169.09, subd. 5a, is ambiguous. Accordingly, we must first determine whether Minn.Stat. § 169.09, subd. 5a, and Minn.Stat. § 65B.49, subd. 5a(i)(2) are ambiguous as applied to the facts of this case. "A statute is only ambiguous when the language therein is subject to more than one reasonable interpretation." *See Schroedl,* 616 N.W.2d at 277 (citation omitted).

We have previously concluded in section B, *supra,* that section 65B.49, subd. 5a(i)(2) is not ambiguous, and therefore does not fall within the reach of section (b)(2). Thus, we must examine whether Minn. Stat. § 169.09, subd. 5a is ambiguous. It provides:

> Whenever any motor vehicle shall be operated within this state, by any person other than the owner, with the consent of the owner, express or implied, the operator thereof shall in case of accident, be deemed the agent of the owner of such motor vehicle in the operation thereof.

This statute has consistently been interpreted as creating vicarious liability as to vehicle owners when none existed at common law. *See, e.g., Shuck v. Means,* 302 Minn. 93, 96, 226 N.W.2d 285, 287 (1974) (explaining that the purpose of Minn.Stat. § 170.54 (1974), now codified at Minn.Stat. § 169.09, subd. 5a, was to make vehicle owners liable when "no such liability would otherwise exist, giving . . . injured persons more certainty of recovery by encouraging owners to obtain appropriate liability insurance"); *see also Kangas v. Winquist,* 207 Minn. 315, 316–17, 291 N.W. 292, 293 (1940) (explaining that the purpose of 3 Mason Minn. St.1938 Supp. § 2720–104, now codified at Minn.Stat. § 169.09, subd. 5a, was to impose vicarious liability on vehicle owners for the tortious acts of permissive drivers).

We conclude that there is nothing ambiguous about the statute. Minn.Stat. § 169.09, subd. 5a, is not a financial re-

---

**9.** Other courts have also held that similar state laws were preempted by the Graves Amendment. *See Garcia,* 540 F.3d at 1248 (rejecting the argument that the Graves Amendment distinguishes between limited and unlimited vicarious liability statutes: "[t]he distinction Congress drew is between liability based on the companies' own negligence and that of their lessees, not between limited and unlimited vicarious liability"); *Rahaman v. Falconer,* No. FSTCV076000713, 2009 WL 1958508, at *6 (Conn.Super.Ct. June 9, 2009) (unpublished opinion) (Connecticut's vicarious-liability cap statute neither compels liability insurance nor imposes liability for failure to meet "liability insurance requirements").

sponsibility law that limits, or conditions liability of the rental-vehicle owner for failure to meet insurance-like requirements or liability insurance requirements within the meaning of the (b)(2) savings clause. Rather, vicarious liability of a rental-vehicle owner under the statute applies whether the owner complies with the financial responsibility laws of Minnesota or not. Because there are no financial responsibility laws incorporated into subdivision 5a, we conclude that the statute does not fall within the (b)(2) savings clause. Consequently, Meyer's vicarious liability claim, which is predicated on Minn.Stat. § 169.09, subd. 5a, is preempted by the Graves Amendment.

Affirmed and remanded to the district court to implement the terms of the parties' settlement agreement.