June 4, 2019

**Supreme Court**

No. 2016-335-Appeal.
(PC 11-2266)

Jason Puerini et al.                    :

v.                    :

Jeanne LaPierre et al.                    :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Jason Puerini et al.          :

v.          :

Jeanne LaPierre et al.          :

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Chief Justice Suttell, for the Court.** Federal preemption is the subject of this appeal. It arises out of litigation over the vicarious liability of the owner-lessor of a motor vehicle for the alleged negligence of the driver-lessee in a roadway collision resulting in injuries to the operator of a motorcycle. A hearing justice of the Superior Court resolved the case on summary judgment motions. While several theories of liability were alleged in the complaint, the only issue on appeal before us is whether the hearing justice erred by granting summary judgment in favor of the owner of the car—the corporate entity to which the car lease had been assigned—on the basis that a federal law preempted state statutes authorizing vicarious liability of a car owner for the negligent acts of the driver. To resolve the issue, we must address a question of first impression in this jurisdiction—whether the federal Graves Amendment, 49 U.S.C. § 30106, preempts our state laws allowing a party injured in a motor vehicle accident to recover from the title owner of a vehicle through the owner's vicarious liability for the negligence of the driver. For the reasons set forth below, we affirm the judgment of the Superior Court.

# I

## Facts and Procedural History

In the late afternoon of April 25, 2008, Jason Puerini was operating his motorcycle on Great Road in North Smithfield when an automobile turned out of a parking lot in front of him, resulting in a collision. The automobile was driven by Jeanne LaPierre, the co-lessee of the vehicle in a lease originated by Metro Honda, aka Metro Motors Inc. (Metro Motors), and assigned prior to the collision to Honda Lease Trust (HLT). There is no dispute that Puerini sustained multiple serious injuries from the collision.

In 2011, Puerini and his wife, Andrea, individually and on behalf of their minor children, filed a multi-count complaint in Providence County Superior Court. In addition to Jeanne LaPierre, the complaint named as defendants LaPierre's sister, Priscilla MacPherson, co-lessee of the automobile; Metro Motors, the corporate entity that leased the car to LaPierre and MacPherson; HLT, the corporate entity holding the title to the leased vehicle and the lessor by assignment at the time of the accident; and Amica Mutual Insurance Company,[1] as insurer for LaPierre and MacPherson. The complaint alleged that LaPierre's negligence caused Puerini's injuries, that the corporate defendants were vicariously liable for LaPierre's negligence, and that Puerini's wife and children had suffered loss of consortium. MacPherson filed a cross-claim, seeking indemnification and contribution from codefendants in the event that she was ultimately held liable for plaintiffs' injuries.

In 2013, a hearing justice granted plaintiffs' motion to amend their complaint. The amended complaint added allegations against defendants asserting that, although it was LaPierre

---

[1] The plaintiffs voluntarily dismissed their claims against Amica Mutual Insurance Company a few months later.

who sought to lease the new vehicle, the corporate defendants intentionally placed MacPherson as the primary lessee (with LaPierre as the co-lessee) without MacPherson's and LaPierre's knowledge because LaPierre had been unable to secure financing based on her negative credit history. The amended complaint reasserted several theories of liability against the corporate defendants, including vicarious liability by statute, pursuant to G.L. 1956 §§ 31-33-6 and 31-33-7, as well as through common law theories of bailment and assignment. The plaintiffs also alleged several new theories of statutory liability against the corporate defendants based on the new allegations, including violation of the state deceptive trade practices act and fraud pursuant to G.L. 1956 §§ 31-5.1-1 and 6-13.1-1, respectively; violation of the federal deceptive trade practices act, 15 U.S.C. § 45; and civil liability pursuant to G.L. 1956 § 9-1-2. In addition, plaintiffs alleged common law theories of fraud and negligence, and reasserted the counts for loss of consortium. HLT's answer asserted—as an affirmative defense—that plaintiffs' theories of liability were preempted by federal law.

Between August 2013 and July 2015, Metro Motors and HLT each filed several motions for summary judgment. A hearing on Metro Motors' motions was eventually held in July 2015, and a hearing on HLT's motions was held in September 2015. The hearing justice granted the motions, and plaintiffs filed a premature notice of appeal.[2] After this Court ordered that this case

---

[2] A coordinated effort between the parties and the hearing justice ensued to ensure that plaintiffs ultimately filed a timely notice of appeal. The parties requested that the hearing justice enter final judgment pursuant to Rule 54(b) of the Superior Court Rules of Civil Procedure, and there was much discussion about—and action on—the parties' motions, resulting in two hearings, an order granting the Rule 54(b) judgment, then an order vacating the Rule 54(b) judgment, before plaintiffs ultimately filed their notice of appeal. The notice of appeal was then premature because, on the day it was filed, no judgment had been entered in the case. After a prebriefing conference, this Court remanded the case to the Superior Court for entry of final judgment, which was entered in June 2017. All of this travel ultimately leads to plaintiffs' notice of appeal being valid. *See Correia v. Bettencourt*, 162 A.3d 630, 634 n.7 (R.I. 2017).

be placed on the regular calendar for full briefing and argument, plaintiffs withdrew their appeal with respect to Metro Motors.[3] The issues presented for our review will, therefore, be considered only as to HLT.

## II

## Standard of Review

"This Court reviews a hearing justice's grant of a motion for summary judgment *de novo*." *Bayview Loan Servicing, LLC v. Providence Business Loan Fund, Inc.*, 200 A.3d 153, 156 (R.I. 2019) (quoting *Pineda v. Chase Bank USA, N.A.*, 186 A.3d 1054, 1056 (R.I. 2018)). "We will affirm a trial court's decision only if, after reviewing the admissible evidence in the light most favorable to the nonmoving party, we conclude that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Id.* (brackets omitted) (quoting *Cancel v. City of Providence*, 187 A.3d 347, 350 (R.I. 2018)). "Furthermore, the nonmoving party bears the burden of proving by competent evidence the existence of a disputed issue of material fact and cannot rest upon mere allegations or denials in the pleadings, mere conclusions or mere legal opinions." *Id.* (quoting *Cancel*, 187 A.3d at 350). "Summary judgment should enter against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Id.* (brackets and deletion omitted) (quoting *Cancel*, 187 A.3d at 350). "Additionally, when presented with questions of statutory interpretation, this Court engages in a *de novo* review." *Id.* at 156-57 (quoting *In re Tetreault*, 11 A.3d 635, 639 (R.I. 2011)).

---

[3] The parties agree that both LaPierre and MacPherson are "judgment proof" as a result of their proceedings in bankruptcy court. According to plaintiffs, their remaining claims are against Honda Lease Trust (HLT) as title owner of the vehicle and against LaPierre to the extent of her insurance coverage. The plaintiffs state in their brief that Amica Mutual Insurance Company, LaPierre's insurer, has offered the policy limit of $100,000 per person; plaintiffs have not yet accepted the offer or released its claims against LaPierre.

**Discussion**

This appeal is focused exclusively on plaintiffs' claims that HLT is vicariously liable to them for their injuries. HLT has argued from its first motion for summary judgment, however, that the federal Graves Amendment, 49 U.S.C. § 30106, preempts any state statute imposing vicarious liability on HLT as the title owner of the vehicle LaPierre was driving when the collision occurred. The plaintiffs objected, arguing that, because the General Assembly has "enacted financial responsibility laws[] aimed at making sure an individual hurt on these highways has an avenue of recovery against a lessor, the Graves Amendment is not applicable."

On appeal, plaintiffs hang their hats on two broad arguments. First, they argue that HLT was not entitled to summary judgment because, as asserted in one of HLT's responses to an interrogatory propounded by plaintiffs, HLT was not in the business of leasing or renting motor vehicles at the time LaPierre signed the lease for the vehicle involved in the accident. This interrogatory response, according to plaintiffs, should have precluded summary judgment. Second, plaintiffs argue that the Motor Vehicle Reparation Act, G.L. 1956 chapter 47 of title 31 (MVRA), is a financial responsibility law and thus is not preempted by the Graves Amendment.

For its part, HLT argues that plaintiffs waived their argument that HLT is not entitled to the protections from liability pursuant to the Graves Amendment because the question of whether HLT was a dealer in the business of leasing cars at the time the lease was signed was not argued before the hearing justice. Alternatively, HLT argues that it does in fact fall within the scope of the Graves Amendment's protections because there is no factual dispute that it is a dealer in the business of leasing motor vehicles. HLT also argues that the MVRA is not a vicarious liability statute; instead, HLT contends, the MVRA requires owners of vehicles to have insurance but does

not impose vicarious liability as a consequence for failure to comply with its mandatory insurance provisions.

**A**

**Preemptive Effect of the Graves Amendment**

As noted *supra*, whether the Graves Amendment preempts our state statutes imposing vicarious liability on title owners of motor vehicles for the negligence of their lessees is a question of first impression for the Court.[4]  Pursuant to the Supremacy Clause of the United States Constitution, Art. VI, cl. 2, a state law may be preempted by federal law in one of three ways: by express preemption, field preemption, or conflict preemption. *Verizon New England Inc. v. Rhode Island Public Utilities Commission*, 822 A.2d 187, 192 (R.I. 2003) (citing *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 95-96 (1983)).  Conflict preemption "reflect[s] the congressional intent to preempt state laws based upon 'the federal statute's structure and purpose.'" *Id.* at 193 (quoting *Barnett Bank of Marion County, N.A. v. Nelson*, 517 U.S. 25, 31 (1996)).  "Conflict preemption exists when 'compliance with both federal and state regulations is a physical impossibility,'" *id.* (quoting *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142-43 (1963)), "and where under the circumstances of a particular case, the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* (brackets omitted) (quoting *Crosby v. National Foreign Trade Council*, 530 U.S. 363, 373 (2000)).  "What is a sufficient obstacle is a matter of judgment, to be informed by examining the federal

---

[4] This constitutional preemption question has been raised to us once before, but we did not reach the question because we resolved the issues in that appeal on other grounds. *See Marble v. Faelle*, 89 A.3d 830, 835 (R.I. 2014).

statute as a whole and identifying its purpose and intended effects." *Id.* (deletion omitted) (quoting *Crosby*, 530 U.S. at 373).

The Graves Amendment, 49 U.S.C. § 30106, is part of the Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users (SAFETEA-LU), signed into law by President George W. Bush in August 2005. *Rodriguez v. Testa*, 993 A.2d 955, 960 (Conn. 2010). The SAFETEA-LU is a "comprehensive transportation bill" and "included [the Graves Amendment] in the act as a tort reform measure intended to bar recovery against car rental and leasing companies on the basis of vicarious liability." *Id.* at 960 (citing *Garcia v. Vanguard Car Rental USA, Inc.*, 540 F.3d 1242, 1244 (11th Cir. 2008)). The Graves Amendment states, in pertinent part:

> "**(a) In general.**–An owner of a motor vehicle that rents or leases the vehicle to a person (or an affiliate of the owner) shall not be liable under the law of any State or political subdivision thereof, by reason of being the owner of the vehicle (or an affiliate of the owner), for harm to persons or property that results or arises out of the use, operation, or possession of the vehicle during the period of the rental or lease, if–
>     "**(1)** the owner (or an affiliate of the owner) is engaged in the trade or business of renting or leasing motor vehicles; and
>     "**(2)** there is no negligence or criminal wrongdoing on the part of the owner (or an affiliate of the owner).
>
> "**(b) Financial responsibility laws.**–Nothing in this section supersedes the law of any State or political subdivision thereof–
>     "**(1)** imposing financial responsibility or insurance standards on the owner of a motor vehicle for the privilege of registering and operating a motor vehicle; or
>     "**(2)** imposing liability on business entities engaged in the trade or business of renting or leasing motor vehicles for failure to meet the financial responsibility or liability insurance requirements under State law.
>
> "\* \* \*
>
> "**(d) Definitions.**–In this section, the following definitions apply:

"* * *

"**(2) Owner.**–The term 'owner' means a person who is–

"**(A)** a record or beneficial owner, holder of title, lessor, or lessee of a motor vehicle;

"**(B)** entitled to the use and possession of a motor vehicle subject to a security interest in another person; or

"**(C)** a lessor, lessee, or a bailee of a motor vehicle, in the trade or business of renting or leasing motor vehicles, having the use or possession thereof, under a lease, bailment, or otherwise.

"**(3) Person.**–The term 'person' means any individual, corporation, company, limited liability company, trust, association, firm, partnership, society, joint stock company, or any other entity."

49 U.S.C. § 30106.

The Connecticut Supreme Court summarized paragraph (a) as the preemption clause and paragraph (b) as encompassing two savings clauses. *Rodriguez*, 993 A.2d at 960. It also adopted the meaning of the phrase "financial responsibility or liability insurance requirements" in § 30106(b) ascribed by the Eleventh Circuit Court of Appeals, which defined this phrase as a state's requirement "that motorists have proof of insurance or other financial accountability." *Id.* at 962 (quoting *Garcia*, 540 F.3d at 1247-48). Many appellate courts that have had the opportunity to construe the language and effect of the Graves Amendment have concluded that it preempts state laws imposing vicarious liability on car rental or leasing agencies for the negligent acts of these agencies' lessees while preserving the states' authority both to impose mandatory insurance—or insurance-like—requirements as a condition of operating as a rental or leasing agency and to provide consequences for failure to comply with such insurance requirements. *See Garcia*, 540 F.3d at 1247-48; *Rodriguez*, 993 A.2d at 958, 961-62; *Vargas v. Enterprise Leasing Company*, 60 So. 3d 1037, 1042-43 (Fla. 2011) (recognizing that the Graves Amendment preempts Florida statute imposing vicarious liability on short-term lessors); *State Farm Mutual Automobile Insurance Company v. Koshy*, 995 A.2d 651, 659-60 n.6 (Me. 2010) (recognizing that Maine's

rental vehicle liability statute, Me. Rev. Stat. Ann. tit. 29-A, § 1652, has been preempted by the Graves Amendment); *Meyer v. Nwokedi*, 777 N.W.2d 218, 224 (Minn. 2010).

Three chapters within title 31 of the General Laws, titled "Motor and Other Vehicles," have been cited by the parties at various stages of this case: chapters 33, 34, and 47. The plaintiffs alleged in their pleadings that HLT is vicariously liable for their injuries pursuant to §§ 31-33-6 and 31-33-7.[5] Section 31-33-6 provides that:

> "Whenever any motor vehicle shall be used, operated, or caused to be operated upon any public highway of this state with the consent of the owner, lessee, or bailee, expressed or implied, the driver of it, if other than the owner, lessee, or bailee, shall in the case of an accident be deemed to be the agent of the owner, lessee, or bailee, of the motor vehicle unless the driver shall have furnished proof of financial responsibility in the amount set forth in chapter 32 of this title, prior to the accident. For the purposes of this section, the term 'owner' includes any person, firm, copartnership, association, or corporation having the lawful possession or control of a motor vehicle under a written sale agreement."

We have previously recognized that "the manifest purpose [of this statute] is to ensure that a victim of a car injury has an avenue of recovery." *Hough v. McKiernan*, 108 A.3d 1030, 1037 (R.I. 2015) (quoting *Dias v. Cinquegrana*, 727 A.2d 198, 199 (R.I. 1999)); *see also Oliveira v. Lombardi*, 794 A.2d 453, 459 (R.I. 2002). Section 31-33-6 "abrogate[d] the common law rule that shielded an automobile owner 'from liability for the negligence of a person to whom the owner entrusted the vehicle unless such negligence occurred while the operator was engaged in conducting business

---

[5] General Laws 1956 § 31-33-7 is not pertinent to the preemptive effect of the Graves Amendment. But, for the interested reader, it provides that:

> "In all civil proceedings, evidence that at the time of the accident or collision the motor vehicle was registered in the name of the defendant, shall be prima facie evidence that it was being operated with the consent of the defendant, and the absence of consent shall be an affirmative defense to be set up in the answer and proved by the defendant." Section 31-33-7.

for the owner.'" *Id.* at 1039 (quoting *Dias*, 727 A.2d at 199). We interpreted the effect of this statute to hold "a motor vehicle owner vicariously liable for the acts of another driver who drives with the owner's consent * * * unless that driver 'furnished proof of financial responsibility' before the accident." *Id.* at 1036-37 (quoting § 31-33-6).

We have also previously held that, "for consenting owners [i.e. lessors] to protect themselves from liability under § 31-33-6, the authorized *drivers* of the leased vehicles must have provided proof of financial responsibility before the accident occurred." *Oliveira*, 794 A.2d at 460. Therefore, to the extent that § 31-33-6 "impos[es] liability on business entities engaged in the trade or business of renting or leasing motor vehicles for failure to meet [Rhode Island's] financial responsibility or liability insurance requirements," § 30106(b)(2), we are of the opinion that § 31-33-6 is not preempted because it falls within the § 30106(b)(2) savings clause of the Graves Amendment.

When HLT filed its first motion for summary judgment, it argued that the Graves Amendment preempted G.L. 1956 §§ 31-34-1 and 31-34-4. Section 31-34-1(a) prohibits a motor vehicle owner "engaged in the business of renting motor vehicles or trucks without drivers" from "rent[ing] a motor vehicle without a driver otherwise than as a part of a bona fide transaction involving the sale of the motor vehicle * * * unless the owner has previously notified the division of motor vehicles of the intention to so rent the vehicle and has given proof of financial responsibility," in specified amounts. This statutory section does not address liability and so is not affected by the Graves Amendment. In contrast, § 31-34-4 establishes vicarious liability for the title owner of a motor vehicle when the vehicle operator's negligence causes damage:

> "Any owner of a for hire motor vehicle or truck who has given proof
> of financial responsibility under this chapter or who in violation of
> this chapter has failed to give proof of financial responsibility, shall
> be jointly and severally liable with any person operating the vehicle

for any damages caused by the negligence of any person operating the vehicle by or with the permission of the owner." Section 31-34-4(a).

In our opinion, § 31-34-4 clearly conflicts with the Graves Amendment, § 30106(a), because it imposes liability on "[a]ny owner of a for hire motor vehicle or truck" for the negligence of the vehicle's operators regardless of whether proof of financial responsibility had been provided. Section 31-34-4 is therefore preempted by the Graves Amendment pursuant to the doctrine of conflict preemption. *See Verizon New England Inc.*, 822 A.2d at 193.

The MVRA entered the discussion through plaintiffs' objection to HLT's motion for summary judgment. This Court has previously recognized the express intent of the MVRA: "[T]o ensure that 'innocent victims of motor vehicle accidents may be recompensed for the injury and financial loss inflicted upon them.'" *Derderian v. Essex Insurance Co.*, 44 A.3d 122, 129 n.6 (R.I. 2012) (quoting § 31-47-1(b)). Section 3.1 of the MVRA mandates that applicants for registration or renewal of registration of motor vehicles sign a statement certifying, *inter alia*, that the motor vehicle will not be operated unless the motor vehicle is covered by "financial security."[6] The General Assembly defined "[p]roof of financial security" as the:

---

[6] General Laws 1956 § 31-47-3.1 provides, in relevant part, that:

> "(a) No motor vehicle shall be registered and no registration renewed in this state unless the application for the registration of a motor vehicle shall contain a statement to be signed by the applicant who does all of the following:
> "(1) States that the applicant will not operate, or allow to be operated, the registered motor vehicle or any other motor vehicle unless all those motor vehicles shall be covered by financial security;
> "(2) Contains a brief summary of the purposes and operation of this chapter, the rights and duties of the applicant and the penalties for violation of this chapter;
> "(3) Warns the applicant that this chapter does not prevent the possibility that the applicant may be involved in an accident with

"proof of ability to respond in damages for liability arising out of the ownership, maintenance, or use of a motor vehicle as evidenced by an owner's policy of liability insurance, a financial security bond, a financial security deposit, or qualification as a self-insurer under this title, or in the case of a nonresident, under self-insurance provisions of the laws of the jurisdiction of that nonresident." Section 31-47-2(15); *see also Mendez v. Brites*, 849 A.2d 329, 335 (R.I. 2004).

Section 2 of the MVRA defines a "'[d]ealer engaged in the business of leasing motor vehicles' [as] any person engaged in the business of regularly making available, offering to make available, or arranging for another person to use a motor vehicle pursuant to a bailment, lease, or other contractual arrangement." Section 31-47-2(4).

The penalties for failure to comply are set forth in § 31-47-9, which provides, in part, that

> "[a]ny owner of a motor vehicle registered in this state who * * * knowingly operate[s] the motor vehicle or knowingly permit[s] it to be operated in this state without having in full force and effect the financial security required by the provisions of this chapter * * * may be subject to a mandatory suspension of license and registration * * *[.]"

---

an owner or operator of a motor vehicle who is without financial responsibility.
"* * *

"[(b)](2) In the case of a person who leases any motor vehicle from a dealer engaged in the business of leasing motor vehicles who agrees to make application for registration of the motor vehicle on behalf of the lessee, the person shall sign a statement that complies with subsection (a) of this section, and the dealer shall do either of the following:

"(i) Submit the statement signed by the person to the division of motor vehicles;

"(ii) Sign and submit a statement that certifies that the statement has been signed and filed with the dealer or incorporated into the lease."

- 12 -

The MVRA does not impose vicarious tort liability on dealers who do not comply with the mandatory insurance requirements therein. Therefore, the MVRA does not conflict with the Graves Amendment and is not preempted by it. *See Verizon New England Inc.*, 822 A.2d at 193.

**B**

**HLT's Liability**

Turning now to the allegations and undisputed facts in the present case, there is no dispute that HLT, as title owner of LaPierre's vehicle, was the "owner" of the vehicle pursuant to § 31-33-6. *See Oliveira*, 794 A.2d at 460 ("[L]essors, as legal titleholders and registered owners of the vehicles in question, were 'owners' of the vehicles under § 31-33-6, and therefore subject to its vicarious liability provisions."). In *Oliveira*, which was decided before the enactment of the Graves Amendment, we held that the owner and lessor of the motor vehicle involved was subject to liability for the negligence of the driver because the driver had not provided proof of financial responsibility before the accident. *Id.*

In performing our *de novo* review of HLT's motion for summary judgment, we must examine the evidence HLT submitted in support of its motion as well as the evidence plaintiffs submitted in objection thereto. HLT provided the Superior Court with the "Closed-End Vehicle Lease Agreement" for the vehicle LaPierre was driving at the time of the collision as well as a certified copy of a "Rhode Island Special Financial Responsibility Insurance Certificate" filed by HLT with the Registry of Motor Vehicles in 2001. The Lease Agreement includes LaPierre's insurance policy details, which demonstrates that she had furnished proof of financial responsibility before the collision occurred. HLT's financial-responsibility certificate reflects its insurance policy details in effect in 2001, and plaintiffs have not provided any evidence to suggest

that this certificate was no longer valid at the time of the collision in 2008. It is undisputed, therefore, that HLT was in compliance with the state's mandatory insurance laws.

The only attempt plaintiffs make to demonstrate a genuine issue of material fact that should have precluded summary judgment in favor of HLT is to assert—for the first time on appeal—that HLT provided contradictory information during the pleading and discovery phases of the case regarding whether it was in fact a "[d]ealer engaged in the business of leasing motor vehicles" pursuant to § 31-47-2(4) of the MVRA, or a "business entit[y] engaged in the trade or business of renting or leasing motor vehicles" pursuant to § 30106(b)(2) of the Graves Amendment. In HLT's answer to plaintiffs' amended complaint, it admitted plaintiffs' allegation that "at all times relevant hereto [HLT] was in the business of leasing long term vehicles to residents in Rhode Island." The plaintiffs argue before us, however, that HLT provided a contradictory answer in its response to the following interrogatory: "For the time period 2005-2006 was [HLT] required to adhere to any federal, state or local regulations or laws relative to the financing or leasing of motor vehicles?" HLT responded with an objection that the question was overly broad and with the following statement: "Without waiving said objection, [HLT] was not involved in the financing or leasing [of] motor vehicles from 2005-2006. [HLT] was just the owner of some of the vehicles."

It is well settled that, as here, a party can waive an argument on appeal from the grant of summary judgment by not raising it in the trial court for the hearing justice's consideration. *See Dallman v. Isaacs*, 911 A.2d 700, 704 (R.I. 2006). Even if plaintiffs had not waived this argument, however, in our opinion this supposedly contradictory interrogatory response would not have demonstrated a genuine issue of material fact with respect to whether HLT was engaged in the business of leasing vehicles because the interrogatory simply brings out a nuance supported by other record evidence in this case. That is, HLT is the title owner to some leased vehicles but is

"not involved in the financing or leasing" side of the business because a business subsidiary (here, Metro Motors) is directly responsible for the procedures leading up to the signed lease agreement and the assignment thereof to HLT.

In our opinion, the record in this case shows that there is no genuine issue of material fact that HLT is engaged in the general business of leasing motor vehicles. Because the record evidence demonstrates the absence of a factual dispute with respect to whether HLT had complied with the mandatory insurance requirement that it furnish proof of financial responsibility as a condition of operating as a lessor of motor vehicles, we are of the opinion that HLT was entitled to summary judgment on the plaintiffs' claims that it is vicariously liable for their injuries.[7]

## IV

## Conclusion

For the reasons set forth herein, we affirm the judgment of the Superior Court. The record of this case shall be returned to that tribunal.

---

[7] The plaintiffs also argue, for the first time on appeal, that they should be able to pursue an insurance coverage claim against HLT to the limits of HLT's insurance coverage. Because there is no indication in the record that the plaintiffs have attempted to file a claim with HLT's insurance carrier and this argument is presented for the first time in the plaintiffs' appeal, we do not address it.

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Jason Puerini et al. v. Jeanne LaPierre et al. |
| **Case Number** | No. 2016-335-Appeal.<br>(PC 11-2266) |
| **Date Opinion Filed** | June 4, 2019 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia JJ. |
| **Written By** | Chief Justice Paul A. Suttell |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Richard A. Licht |
| **Attorney(s) on Appeal** | For Plaintiffs:<br><br>Lauren E. Jones, Esq.<br>Manuel Andrews, Esq. |
| | For Defendants:<br><br>Annette G. Hasapidis, Pro Hac Vice<br>Howard A. Fried, Pro Hac Vice<br>Faith A. LaSalle, Esq.<br>Paul R. Crowell, III, Esq. |